FORT SMITH LIGHT & TRACTION COMPANY *v.* PHILLIPS.

Opinion delivered October 21, 1918.

1.  RAILROADS—LOOKOUT STATUTE—INTERURBAN CARS.—The Lookout
    Statute of 1911 (Acts 1911, p. 275), making it the duty of all per-
    sons running trains in this State upon any railroad to keep a
    constant lookout for persons and property upon the track, applies
    to interurban electric railways, as well as steam railways.

2.  TRIAL—REPETITION OF INSTRUCTIONS.—Refusal of the court to give
    a correct instruction was not error where the court gave another
    instruction which covered the same subject.

3.  RAILROADS—CONTRIBUTORY NEGLIGENCE—INSTRUCTION.—In view of
    the Lookout Statute, an instruction which told the jury that there
    could be no recovery for the death of one killed by an interurban
    car if deceased was guilty of contributory negligence "unless the
    motorman actually saw deceased in a perilous position in time to
    stop the car to avoid the injury" was properly modified by adding
    the words, "or by the exercise of reasonable care could have seen
    him."

4.  RAILROADS—NEGLIGENCE—BURDEN OF PROOF.—Since the Lookout
    Statute places upon the railroad company the burden of proof
    after the injury is shown to have occurred under such circum-
    stances as to justify the inference that the danger might have
    been discovered and the injury avoided if a lookout had been kept,
    the court properly refused an instruction that "the presumption
    is that defendant's servants were exercising due care."

5.  RAILROADS—NEGLIGENCE—INSTRUCTIONS.—The court properly re-
    fused an instruction telling the jury specifically that there was no
    evidence in the case to support the allegation that the headlight on
    the car was not burning where there was some evidence to the
    contrary and where the case was submitted solely upon the negli-
    gence of the defendant in failing to keep a lookout or in failing to
    exercise care to avoid injuring deceased after discovering his per-
    ilous position.

6.  APPEAL AND ERROR—MATTERS NOT SHOWN OF RECORD.—A map not
    a part of the record will not be considered on appeal.

7.  EVIDENCE—GEOGRAPHICAL FACTS.—The Supreme Court can not
    take notice judicially of particular points alleged to be inside or
    outside of the boundaries of a municipal corporation.

Appeal from Crawford Circuit Court; *Jas. Cochran,*
Judge; affirmed.

*Hill, Fitzhugh & Brizzolara,* for appellant.

1. No issue for jury as to whether headlight on car was burning. There was no evidence of negligence on the part of defendant in operating its car without a headlight burning.

2. Court erred in refusing to instruct that no presumption of negligence from happening of the accident. The seventh instruction for defendant should have been given. 72 Ark. 572-9; 76 Pac. 560; 27 *Id.* 371.

3. The deceased had the last chance to avoid the accident, therefore defendant's instruction 1-A and ·B should have been given. The duty of avoiding the accident was mutual and both parties were required to exercise ordinary care to prevent the accident. Deceased's negligence was complete and he had the last clear chance to avoid accident. 8 Thompson on Negl., § 240; 19 So. 863-871; 101 Am. St. Rep. 68-75; 97 Cal. 169; 31 Pac. 835; 51 Atl. 421-3; 92 Pac. 101-5; 40 L. R. A. 172; 29 Cyc. 530-1; 27 L. R. A. (N. S.) 379; 34 S. W. 573; 7 L. R. A. (N. S.) 132; 34 *Id.* 685; 97 Fed. 752; 109 Pac. 178; 115 *Id.* 151; 53 So. 805.

4. It was error to refuse No. 11. Also error to modify No. 10. 62 Ark. 165; 64 *Id.* 420; 62 *Id.* 245; 77 *Id.* 401; 116 *Id.* 125.

5. Incompetent evidence was admitted and there is no legal evidence to support the verdict. Contributory negligence was shown. 76 Ark. 356.

*Sam R. Chew,* for appellee.

1. Negligence was proven. The employees saw him on the track at a public crossing in ample time by the exercise of the slightest care to have avoided the injury. 127· Ark. 377; 42 *Id.* 321; 80 *Id.* 169; 81 *Id.* 231.

2. There are no errors in the instructions. *Supra.*

McCULLOCH, C. J. Appellant is a corporation operating under its several franchises a street railroad in each of the cities of Fort Smith and Van Buren, and also an interurban line connecting the two cities. E. Phillips, the husband and father of appellees, was killed in a col-

lision with one of appellant's cars at a road crossing between Fort Smith and Van Buren, and appellees instituted this action to recover damages, alleging negligence on the part of the employees of appellant in charge of the car with which said decedent came into collision.

The collision occurred on the evening of February 11, 1917, about seven o'clock at a road crossing which was a regular stopping place for the interurban cars. Phillips lived within a short distance of this crossing, and on the occasion in question came to the crossing for the purpose of taking passage on a car going into Fort Smith. The railroad between Fort Smith and Van Buren was double-tracked, the north-bound cars from Fort Smith to Van Buren occupying the east track, and the south-bound cars running from Van Buren to Fort Smith occupying the west track. The place where the collision occurred is designated as stop No. 7, and is situated between the car barns of the company on the south and a park nearly two miles to the north. The car with which Phillips collided had come out from Fort Smith on the east track, as usual, but was destined to return to the barn after completing its trip north-bound. It had passengers for points as far north as stop No. 11, but as there was no connecting switch between the tracks less than about two miles to the north, the motorman and conductor reversed the route at stop No. 11—that is to say they changed the trolley, and made the trip back to the barn on the east track.

The testimony adduced by appellee tends to show that it is very unusual for a car to be run south on the east track. Phillips lived east of the tracks and came out at stop No. 7 for the purpose, as before stated, of taking a car for Fort Smith. It was dark at the time, but there was an electric light—an arc light—at stop No. 7. There were three boys about 16 or 17 years of age at play within a distance of about 75 yards of the place where the injury occurred, and those boys were the only eye witnesses except the motorman and conductor. These boys were introduced as witnesses, and upon their testimony appellees relied mainly for support of the charge of negli-

gence against appellant's employees. The testimony of
the boys is not altogether harmonious, but when consid-
ered together it is sufficient to warrant the conclusion
that Phillips walked upon the track at stop No. 7 and
stood there under the strong electric light for an apprecia-
ble length of time with the car approaching; that he took
out his pocketbook and was getting money out of his
pocket with which to pay his fare, and that a short time
before the car struck him he turned around and made an
effort to get off the track but was struck by the car before
he could get off. The testimony also tends to show that
there was another car approaching at that time on the
other track, and that Phillips was misled and confused by
the extraordinary circumstance of the car coming toward
the south on the east track. The testimony also warrants
the conclusion that there was no headlight burning on the
car or that it was burning very dimly. One of the boys
testified that Phillips stopped within two or three feet of
the track and took out his pocketbook and then went on
the track as the car approached, but another of the boys
testified that Phillips stopped on the track when the car
was a considerable distance up the track and took out his
pocketbook and then stood there until the car got nearly
to him and then turned around for the purpose of getting
off the track. The testimony of each of the boys tends
to show that Phillips was struck by the fender on the
front end of the car while he was on the track.

The motorman testified that he was keeping a look-
out and when he got in a short distance of the crossing
he saw Phillips running toward the track and that he
then applied the air and tried to stop the car, but failed
to do so in time and that Phillips came into collision with
the corner of the car without getting on the track at all.

Of course, we must accept the testimony in its light
most favorable to appellees in testing its sufficiency to
sustain the verdict, and we are of the opinion that the tes-
timony is amply sufficient to sustain the verdict. It war-
rants the conclusion that Phillips went upon the track and
stopped under the strong electric light that was burning

there and stood there while getting out his pocketbook, and that his perilous situation was discovered, or could by the exercise of proper care have been discovered by the motorman in time to stop the car and prevent the injury. That was the theory upon which the case was submitted to the jury under the court's instructions.

The force of many of appellant's assignments of error depends upon the applicability of what is known as the look-out statute to interurban electric railroads. That statute as originally enacted by the General Assembly of 1891 (Acts 1891, p. 213; Kirby's Digest, sec. 6607) made it the duty "of all persons running trains in this State upon any railroad to keep a constant look-out for persons and property upon the track of any and all railroads, and if any person or property shall be killed or injured by the neglect of any employees of any railroad to keep such look-out, the company owning and operating any such railroad shall be liable" for damages. It was decided by this court in numerous cases that that statute had no application to cases of injuries to trespassers on the track but the statute was amended by the Act of May 26, 1911 (Acts 1911, p. 275) to read as follows:

"It shall be the duty of all persons running trains in this State upon any railroad to keep a constant lookout for persons and property upon the track of any and all railroads, and if any person or property shall be killed or injured by the neglect of any employee of any railroad to keep such lookout, the company owning or operating any such railroad, shall be liable and responsible to the person injured for all damages resulting from neglect to keep such lookout, notwithstanding the contributory negligence of the person injured, where, if such lookout had been kept, the employee or employees in charge of such train of such company could have discovered the peril of the person injured in time to have prevented the injury by the exercise of reasonable care after the discovery of such peril, and the burden of proof shall devolve upon such railroad to establish the fact that this duty to keep such lookout has been performed."

We have decided that the lookout statute does not apply to street railways operated in cities and towns. *Bain* v. *Fort Smith Light & Traction Co.,* 116 Ark. 125. It does not follow, however, from that decision that the statute does not apply to interurban electric railways. On the contrary, we see no reason why, according to its language, it should not be held to apply to such railroads. The fact that the same corporation operates street railways in the two cities of Fort Smith and Van Buren in connection with the interurban line between the two cities affords no reason why the principles of law with respect to the operation of railroads should not apply. *Fort Smith Light & Traction Co.* v. *McDonough,* 119 Ark. 254.

There is a very marked distinction between the operation of street railways and of interurban electric railroad lines. The cars are operated under altogether different circumstances, and the companies occupy somewhat different relations towards travellers, and the Legislature may have had this in mind in making the lookout statute applicable to an interurban electric line, and not to street railways. At any rate, we discover no reason why a railroad should be excluded from the operation of the lookout statute merely because the cars are propelled by electricity and not by steam. We decided in the case of *Central Railway Company of Arkansas* v. *Lindley,* 105 Ark. 294, that the operation of a motor car was within this statute.

The Act of 1911, *supra,* makes a very material change in the law, and it is now applicable to trespassers and to persons otherwise guilty of contributory negligence in occupying a position on the track. The statute in so many words provides that, notwithstanding the contributory negligence of the person injured, the railway company shall be liable on account of the injury "where, if such lookout had been kept, the employee or employees in charge of such train of such company could have discovered the peril of the person injured in time to have prevented the injury." We construed the statute to mean "that the railroad company now owes the same duty to

keep a lookout to avoid injuring the trespasser upon its tracks, and that upon proof of injury to such person by the operation of its trains under such circumstances as to raise a reasonable inference that the danger might have been discovered and the injury avoided if a lookout had been kept, a *prima facie* case is made, and the burden of proof then devolves upon the railroad company to show that a proper lookout was kept as required by the statute." *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Gibson,* 107 Ark. 431, 113 Ark. 417; *Chicago, Rock Island & Pacific Ry. Co.* v. *Bryant,* 110 Ark. 444.

Many of the refused instructions which appellant requested were in conflict with this view of the law, and the rulings of the court were correct in refusing to so instruct. On the contrary, the instructions which the court gave at the instance of appellees were in accordance with this view, and were correct.

It is insisted that the court erred in refusing to give instruction No. 11, which would have told the jury, in substance, that if Phillips ran into the car or upon the tracks in front of the car so close to it that the motorman in charge could not, with the exercise of ordinary care, have stopped the car, or otherwise prevented the injury, there could be no recovery. This instruction was a correct one, and was applicable to the issues involved, but the court gave instruction No. 9 at appellant's request which covered the same subject.

The court was also correct in modifying appellant's instruction No. 10 which would, without the modification, have told the jury that there could be no recovery if Phillips was guilty of contributory negligence unless the motorman "actually saw deceased in a perilous position in time to stop the car to avoid the injury." The court properly modified the instruction by inserting the words "or by the exercise of reasonable care could have seen him." The modification brought the instruction within the terms of the lookout statute, and was correct.

Instruction No. 7, requested by appellant, was also properly refused in telling the jury that "the presump-

tion is that defendant's servants were exercising proper care.'' The lookout statute, as we have already·seen, puts the burden of proof on the railroad company, after the injury is shown to have occurred under such circumstances as to justify the inference that the danger might have been discovered and the injury avoided if a lookout had been kept. Therefore, the instruction as asked was clearly erroneous, and was properly refused.

Appellant asked an instruction telling the jury specifically that there was no evidence in the case that the headlight on the car was not burning, and that that issue should not be considered. The court refused to give that instruction, and the ruling is assigned as error. We think, in the first place, that there was some evidence of a substantial nature to the effect that the headlight was not burning. The motorman and conductor both testified that the headlight was burning brightly, but three or four other witnesses stated that they saw the lights burning on the inside of the car but did not notice that the headlight was burning. Those witnesses did not pretend to be positive about the headlight on the front end, but they were certain that the lights were burning on the inside of the car and did not observe that the headlight on the end of the car was burning. Therefore, the jury might have drawn the inference that the headlight on the end of the car was not burning, otherwise the witnesses would have seen it and remembered it. · In the next place, we think there was no error in refusing the instruction for the reason that the plaintiff's instructions submitted the case solely upon the negligence of the company in either failing to keep a lookout or in failing to exercise care to avoid injuring Phillips after discovering his perilous position.

That being the only issue in the case, it is not conceivable that the jury could have been misled by the allegation in the complaint to the effect that the headlight was not burning, even if there was no evidence to support that allegation. Judgment affirmed.

ON REHEARING.

McCULLOCH, C. J.   It is now insisted for the first time that the killing of Phillips occurred at a point on appellant's line inside of the city of Fort Smith, and that for that reason the lookout statute did not apply.   It was alleged in the complaint that appellant was operating an electric railway between the cities of Fort Smith and Van Buren, Arkansas, and that Phillips was run over and killed by one of appellant's cars "at or near stop No. 7, a point on said line of track between Fort Smith and Van Buren."   The answer contains no denial of the allegation that the killing occurred on the interurban line between the two cities named.

Appellant exhibits with the petition for rehearing a map of the two cities, but the map was not a part of the record below and we cannot take notice of it here.   We cannot take notice judicially of particular points inside or outside of the boundaries of a municipal corporation.

We are also asked to reconsider the decision to the effect that the lookout statute applies to interurban electric railways, but we are satisfied as to the correctness of that decision and decline to recede from it.   Rehearing denied.