## DAVIS v. SCOTT.

### Opinion delivered December 12, 1921.

1. RAILROADS—FAILURE TO KEEP LOOKOUT.—Where the undisputed evidence shows that the engineer on a railroad locomotive was keeping a lookout, and that he saw decedent approach the track, and that he at once gave the signal for brakes, threw- on the emergency brake and made an unusually short stop, it was error to submit to the jury the issue of negligence in failing to keep a lookout.

2. RAILROADS—NEGLIGENCE—PROXIMATE CAUSE.—Where decedent knew that a train was approaching, and, being totally deaf, walked in front of the engine, failure of the engineer to give the statutory signals was not the proximate cause of the injury.

3. RAILROADS—NEGLIGENCE—HIGH RATE OF SPEED.—Proof that a train approached a town at an unusually high rate of speed *held* to justify a finding of negligence in the operation of the train.

4.  RAILROADS—NEGLIGENCE—PROXIMATE CAUSE.—A train approached a town on a down grade at an unusually high rate of speed where there was a curve in the track and numerous obstructions, where the presence of pedestrians might reasonably have been anticipated, where decedent might have been misled by not anticipating such speed, and where, if a slower speed had been maintained, the engineer might have stopped in time to avoid killing plaintiff's decedent. *Held* there was evidence upon which to submit to the jury the issues as to whether the operation of the train at an excessive rate of speed was not the proximate cause of the killing.

RAILROADS—PRESUMPTION OF NEGLIGENCE.—While there is a presumption of negligence where a traveler is injured at a railroad crossing by the running of a train, no such presumption arises in the case of a trespasser on the railroad track until it is shown that the injury would not have occurred if a lookout had been kept and warning signals given of the train's approach.

6.  APPEAL AND ERROR—INVITED ERROR.—While it was error at plaintiff's request to submit to the jury the question of contributory negligence where it appears that plaintiff's decedent knew that the train was approaching and either negligently attempted to cross the track ahead of it or failed to look for its approach, such error was invited where defendant asked for an instruction submitting that issue.

7.  RAILROADS—CONTRIBUTORY NEGLIGENCE.—In an action against a railroad company for the death of plaintiff's decedent, where the undisputed evidence established decedent's negligence, the court, under Crawford & Moses' Dig. § 8575, should have told the jury that they should find for the defendant unless the decedent's negligence was less than that of the trainmen, in which case the damages should be diminished in proportion to such contributory negligence.

Appeal from Yell Circuit Court, Danville District; *A. B. Priddy*, Judge; reversed.

*Thomas S. Buzbee* and *George B. Pugh*, for appellant.

The court should have directed a verdict for defendant. The facts did not justify a submission of the question to the jury. 107 Ark. 431; 97 Ark. 560; 129 Ark. 77.

The testimony is not sufficient to show negligence in the speed maintained by the train. 63 Ark. 177; 84 Ark. 270.

The plaintiff, knowing his physical defect, was guilty of negligence in going upon the track in front of the approaching train. 150 S. W. 29; 33 S. W. 396.

Damages cannot be recovered where the testimony shows that the employees exercised all ordinary and reasonable care and diligence to avoid injury. 72 So. 283; 70 So. 998. See also 51 Fla. 304; 41 So. 70; 53 Fla. 375; 43 So. 235; 70 So. 437.

The damages were not diminished in proportion to the amount of negligence attributable to plaintiff. 58 So. 641.

*Wilson & Chambers* and *Evans & Evans,* for appellees.

1. It was not error to refuse a peremptory instruction. Since the enactment of act No. 156, Acts 1919, p. 143, contributory negligence is no defense unless it also appears that such contributory negligence is equal to or greater than the negligence of the railroad causing the injury or death. 146 Ark. 555. On the question of Scott's contributory negligence, if any, in undertaking to cross the track, the jury had the right to take into consideration the fact that the statutory warnings were not given. 138 Ark. 589; 63 *Id.* 182, 184. The appellant was under the duty to moderate the speed of the train in approaching this community, and to anticipate the presence of, and to exercise due care for the protection of, pedestrians. 203 S. W. 740; 172 Pac. 108; 190 *Id.* 385; 164 Fed. 785, 22 L. R. A. (N. S.) 350; 145 Ark. 592; 80 So. 708. The lookout statute requires a constant lookout for persons or property on or near the track. To what purpose, if a train is to be allowed to run at such high speed that the danger cannot be avoided when discovered? 184 Pac. 765; 190 Pac. 385; 30 W. Va. 228; 4 S. E. 242; 79 Pa. 33; 2 Ohio Dec. 252; 113 Pa. 610, 6 Atl. 238; 138 Pa. 506, 21 Atl. 140, 21 Am. Rep. 914; 33 Cyc. 808; 90 S. W. 918; 22 R. C. L. 947; 30 So. 285, 106 La. 111; 101 Miss. 768; 81 *Id.* 95, 32 So. 311; 146 Ky. 603, 143 S. W. 31.

Scott was not a trespasser, but was crossing the track at the station along a beaten path used by pedestrians. 65 Ark. 235; 70 *Id.* 481; 112 *Id.* 401; 112 *Id.* 401; 136 *Id.* 310; 81 *Id.* 275; 140 *Id.* 68; *Id.* 80; 116 *Id.* 47.

McCulloch, C. J.  Berry Scott was run over and killed at the town of Belleville, in Yell County, by the locomotive of a freight train on the railroad of the Chicago, Rock Island & Pacific Railway Company, then being operated under Government control.  This is an action instituted in the circuit court of Yell County (Danville District) against the Director General of Railroads, as agent, to recover compensation for injuries resulting to the widow and next of kin of said decedent by reason of the latter's death.  The damages were laid in the sum of $3,000, and on the trial of the case the jury awarded damages in the sum of $2,500 in favor of the plaintiffs.

The charges of negligence are, that the train was operated at an excessive and unusual rate of speed; that signals by bell or whistle were not given as required by law; that no lookout was kept, and that ordinary care was not taken to prevent the injury after discovery of Scott's perilous position while approaching the track.  The answer contains a denial of the charges of negligence, and also contains a plea of contributory negligence on the part of decedent.  It is contended, in the first place, that the evidence was not sufficient to justify a recovery, and that the court should have given a peremptory instruction in favor of the defendant.

Deceased was entirely deaf, and it appears that his powers of speech were limited, though he was not altogether a mute.  He could speak to some extent. He was a farmer, about 35 years of age, strong, healthy, alert and quick-minded, and resided on a farm a few miles distant from Belleville.  He came to Belleville on Sunday, September 14, 1919, to bring his sister-in-law and her son, who were to take train for Oklahoma.  The party arrived at Belleville shortly after noon and were

awaiting the arrival of the passenger train due several hours later, going westward. Deceased hitched his team in a grove about 75 or 100 yards north of the railroad track and northeast of the station. The party then repaired to the station-house to await the coming of the passenger train. The freight train which ran over deceased came from the west. It was a fast train not running on schedule time, and did not stop at Belleville. There was a considerable grade for a half-mile or more approaching Belleville from the west, and there was a curve in the track several hundred yards west of the station. The waiting-room for white passengers, where deceased and his party were waiting, was on the west end of the station, and there was a window on that end, through which the track could be seen for a certain distance. There is a little conflict in the testimony as to how far one could see up the track towards the west from this window. There is testimony to the effect that a potato house about 300 feet to the west obscures the view beyond that point, and there is other testimony to the effect that the view was obscured to the distance of 75 or 100 feet. The track runs substantially east and west along there, and the town of Belleville is built up on both sides of the track, the business houses on each side facing the railroad. The main street of the town, running north and south, intersects the railroad track about 50 or 75 feet west of the station, and another street, running in the same direction, intersects the track about 100 feet still further west. There is another crossing east of the station, and there is a pathway, commonly used as an approach to the station, running across the track from a point immediately north of the colored waiting-room, on the east end of the station, diagonally northward near a little flower garden.

There is a conflict in the testimony as to the rate of speed the train was making at the time, and whether it was under power in coming down the grade on this occasion. The testimony adduced by the plaintiff tend-

ed to show that the train was running at an unusual speed, about 35 miles an hour, and that it was not merely rolling down the grade, but was under power. The engineer testified that he was running at a rate of about 25 miles an hour. When the train approached from the west, Mrs. Lizzie Scott, sister-in-law of deceased, who was with him in the waiting room, noticed the smoke of the train and heard the whistle, but before it came in sight she spelled in the mute language of the fingers the words "black smoke." Deceased made no direct reply, but in a moment said, "Oh, my mules!" and dashed out of the door of the waiting room, going in the direction of his team, which was still hitched in the grove north of the track. Mrs. Scott, seeing the danger, called to her grown son to "grab him, grab him," and her son started after deceased to prevent him from crossing the track, which was about 20 feet distant from the station-room door. Deceased reached the railroad track, and about that time Esco Scott, his nephew, caught up with him and attempted to interfere with his crossing the track, but did not succeed, and deceased was struck by the train and instantly killed. His body was carried a short distance down the track. There is evidence tending to show that the attempt to cross the track by deceased was at or near the path or crossing referred to above, which ran along near the flower garden. There was evidence tending to show that, although the train whistled for the station, the signals by bell or whistle were not continued as required by law until the street crossings were passed. The engineer testified that he was on the lookout and saw the deceased come out of the station door and approach the track, and that he at once gave the signal for brakes, threw on the emergency and made an unusually short stop. It is undisputed that, according to the rate of speed the train was making, the stop was unusually quick after the brakes were applied. There were 25 or 30 cars in the train and the train was stopped within a distance of about three-fourths of its

length. It is undisputed that the engineer was keeping a lookout. His testimony on that subject is reasonable and consistent, and there is no other testimony in conflict with it. He testified that he saw deceased when he came out of the door of the station-house, approaching the track, and it is undisputed that the train made an unusually quick stop. The charge of negligence in that respect is therefore unfounded.

There is evidence tending to show that the signals were not given as required by law, but the negligence in that regard was not the proximate cause of the injury. It is undisputed that deceased knew that the train was approaching from the west, and, being totally deaf, the signals would not have afforded any additional warning to him. Under these circumstances, the failure to give the signals could not have . been the proximate cause of the injury. *St. L. I. M. & S. Ry. Co.* v. *Denty,* 63 Ark. 177; *St. L. & S. F. R. Co.* v. *Ferrell,* 84 Ark. 270; *Todd* v. *St. L. I. M. & S. Ry. Co.,* 106 Ark. 390; *Tyler* v. *St. L. I. M. & S. Ry. Co.* 130 Ark. 583; *C. R. I. & P. Ry. Co.* v. *Elzen,* 132 Ark. 431.

But we think that the evidence was sufficient to justify the submission to the jury of the issue of negligence on the part of the operatives of the train in maintaining a high and unusual rate of speed in passing through the town of Belleville and across the intersecting streets. The evidence showed that the train was not running on schedule and came at an unusual rate of speed down grade, so that it could not be held under control so as to afford adequate protection to persons who might be crossing the tracks in the town. Unusual speed of a train does not, under all circumstances, constitute negligence, and often the court may declare, as a matter of law, that the maintenance of a high rate of speed under given circumstances does not constitute negligence, but under other circumstances it may become a question of fact for the determination of the jury. In this instance the train was coming down grade, and there was a curve in the track and other ob-

structions which prevented travelers from observing its approach at any considerable distance. There were numerous street crossings, where the presence of travelers by foot or by automobile or other modes of travel may reasonably have been anticipated, and it was within the sphere of legitimate inference for the jury to say that the speed maintained under these circumstances constituted negligence in the operation of the train. *St. L. I. M. & S. Ry. Co.* v. *Denty, supra; Ford* v. *St. L. I. M. & S. Ry. Co.,* 66 Ark. 363; *Hines* v. *Betts,* 146 Ark. 555; *C. R. I. & P. Ry. Co.* v. *Stepp,* 164 Fed. 785; 22 L. R. A. (N. S.) 350; *St. L. S. F. R. Co.* v. *Jones,* (Okla.) 190 Pac. 385; *Cin. N. O. & T. P. Ry. Co.* v. *Carter,* 180 Ky. 765; 203 S. W. 740. It might be found, too, as a legitimate inference, that the negligence in this regard was the proximate cause of the injury. Deceased knew the train was approaching, and, if he looked towards it after it came in sight, he may have been misled by the excessive speed, and on that account failed to properly judge his chances of getting across before the engine reached him. But, whether the deceased actually looked at the approaching train or not, it is fairly inferable that if the train had been under control at a lower rate of speed, the engineer, by throwing on the emergency, might have slowed down the train so that deceased could have gotten across in safety. If he had had only a moment more, he would have crossed in safety, and this extra time might have been afforded by an attempt on the part of the engineer to stop the train at a lower rate of speed than that which was being maintained at the time.

Our conclusion is, therefore, that there was sufficient evidence to submit this issue to the jury, and this brings us to the consideration of the further questions in this case, whether there was error in submitting the issues to the jury. There being no evidence with respect to negligence in failing to keep a lookout, and the alleged negligence with respect to the failure to give signals not being, as we have seen, the proximate cause

of the injury, the instructions of the court on this subject were abstract and should not have been given. They were prejudicial, for they may have induced the jury to return the verdict in favor of the plaintiffs. *St. L. I. M. & S. Ry. Co.* v. *Kimbrell,* 111 Ark. 134.

It is further insisted that error was committed in giving the following instruction at the request of the plaintiff over defendant's objection:

"If a person is killed or injured in this State by the running of a railroad train, the law presumes that the killing or injury was negligently done. But the railroad to avoid liability for such killing or injury may show by a preponderance of the evidence that the killing or injury was not the result of the negligence of the railroad."

There is a presumption of negligence in a case where a traveler is injured at a railroad crossing, but in case of injury to a person trespassing on the railroad track no presumption arises under the statutes of this State until it is shown that the injury would not have occurred if a lookout had been kept and warning signals given of the approach of the train. Crawford & Moses' Digest, § 8568; *St. L. I. M. & S. Ry. Co.* v. *Gibson,* 107 Ark. 431; *C. R. I. & P. Ry. Co.* v. *Bryant,* 110 Ark. 444; *C. R. I. & P. Ry. Co.* v. *Gunn,* 112 Ark. 401; *Fort Smith L. & T. Co.* v. *Phillips,* 136 Ark. 310.

It is, however, contended by learned counsel for plaintiffs that the statute cited above and the decisions construing it are not applicable because of the effect of another and later statute, Act No. 136, Session of 1919, Crawford & Moses' Digest, § 8575. This later statute is on a different subject and does not affect the former statute or this court's construction of it in the cases cited above. The later statute deals only with the question of liability in case of contributory negligence.

Instruction No. 3 should not have been given in its present form, but should have told the jury that if deceased was killed while attempting to pass over the

track at a crossing, there was a presumption of negligence, or that there was a presumption of negligence if it appeared that the injury could have been avoided by the exercise of proper care on the part of the operatives of the train. If, however, the undisputed evidence shows on the next trial that the injury occurred at the crossing, then an instruction telling the jury that there is a presumption of negligence will be correct. The statute referred to above (Crawford & Moses' Digest, § 8575) reads as follows:

"In all suits against railroads, for personal injury or death, caused by the running of trains in this State, contributory negligence shall not prevent a recovery where the negligence of the person so injured or killed is of less degree than the negligence of the officers, agents or employees of the railroad causing the damage complained of; provided, that where such contributory negligence is shown on the part of the person injured or killed, the amount of the recovery shall be diminished in proportion to such contributory negligence."

This statute establishes in this State what is known as the doctrine of comparative negligence, and provides, in substance, that in case of injury by running trains, contributory negligence of the injured person shall not constitute a defense unless the degree of his negligence is equal to or exceeds the negligence of those operating the train. The court, in its instruction No. 10, submitted the question of contributory negligence and gave this statute, in substance, to the jury. It is, we think, undisputed that deceased was guilty of contributory negligence, and that issue should not have been submitted to the jury. Deceased was 35 years of age, and, as before stated, was strong, active and intelligent. He knew that the train was approaching, and he either negligently attempted to cross the track with knowledge of its close proximity or failed to look to see how close it was. In either event he was guilty of negligence. *St. L. I. M. & S. Ry. Co.* v. *Coleman,* 97 Ark. 438. We cannot,

however, treat this error of the court as prejudicial, for the reason that the defendant also asked for an instruction submitting the question of contributory negligence, and it was given. The court ought to have narrowed the issue on this subject to the sole question whether or not the negligence of deceased was equal to or greater than that of those operating the train, telling the jury that, if they found the negligence of deceased was less in degree than that of the operators of the train, then the plaintiffs were not barred, but that the damages must, in the language of the statute, "be diminished in proportion to such contributory negligence."

While the fact was undisputed that deceased was guilty of contributory negligence, the jury might, under the circumstances of the case, have found that this negligence was of a lesser degree than that of those operating the train. The jury might have found that the engineer was guilty of gross negligence in operating the train at that place at such a high rate of speed, and that deceased, though guilty of negligence in going upon the track, was to some extent misled by the rapid approach of the train and that his negligence was slight because of that fact.

For the errors indicated, the judgment is reversed and the cause remanded for a new trial.

HART, J., dissents.