DICKERSON *v.* ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY.

Opinion delivered May 7, 1928.

*David L. King,* for appellant.

*E. T. Miller, E. L. Westbrooke, Jr.,* and *E. L. West-brooke,* for appellee.

HART, C. J., (after stating the facts.) The first assignment of error is that the court erred in holding that the defendant was entitled to open and close the case to the jury. In order to secure the opening and closing argument in the case before the jury, the defendant admitted the injury and death of the three boys and the loss and damage to the truck by being struck by one of the passenger trains of the defendant at a public crossing in the town of Williford, Sharp County, Arkansas. The admission of the defendant was insufficient to change the burden of proof in the whole case and to give it the right to open and conclude the argument. It was still necessary for the plaintiff to prove the amount of his

damages, and he had the right to open and close, unless the defendant admitted the whole amount of damages claimed by the plaintiff.

In Thompson on Trials (2d ed.) § 228, it is said that, where the plaintiff has anything to prove, in order to get a verdict, whether in an action *ex contractu* or *ex delicto*, and whether to establish his right of action or to fix the amount of his damages, the right to begin and reply belongs to him. Continuing, the learned author said that the unfailing test of this rule is to consider what party would, in the state of the pleadings and of the record admissions, get a verdict for substantial damages if the cause were submitted to the jury without any evidence being offered by either. In § 230, the same author says that in all actions for unliquidated damages, except where the defendant, by his plea or answer, admits not only the cause of action but also the amount of damages claimed, the right is with the plaintiff; since he must introduce evidence showing the extent of his injury, as where, in any action sounding in damages, the cause of action is admitted, and a plea of confession and avoidance is filed, leaving the amount of damages claimed subject to affirmative proof. Our own case of *St. Louis, Iron Mountain & Southern Railway Company* v. *Taylor,* 57 Ark. 136, 20 S. W. 1083, is cited.

In that case a railway company was sued for the killing of stock, and admitted the killing thereof by its train, but denied the value of the animal. The court held that the plaintiff was still entitled to begin and reply, because he was not entitled to a recovery in accordance with the prayer of his complaint if no evidence had been introduced.

In the case of *St. Louis & San Francisco Ry. Co.* v. *Thomason,* 59 Ark. 140, 26 S. W. 598, the railway company was sued for killing stock, and admitted the killing by its train and the value thereof. It was there held that the railway company was entitled to open and conclude the argument, because the plaintiff would have

been entitled to a recovery in accordance with his pleading if no evidence had been introduced.

In a well considered case by the Supreme Court of the State of Georgia, it was held that, to entitle the defendant to the opening and conclusion of the argument in the trial of a case arising *ex delicto,* when the act complained of was not one which, under the law, could be justified, it is necessary that the defendant, by proper pleadings, admit, not only the commission of the act which it is alleged was wrong, but also such other facts as would entitle the plaintiff to have a verdict, without proof, for the amount claimed in the petition. *Brunswick & W. R. Co.* v. *Wiggins,* 113 Ga. 842, 61 L. R. A. 513, 39 S. E. 551. That case was an action instituted by a widow for the killing of her husband by the negligent operation of a train of cars by a railroad company. Among the States cited as supporting this doctrine by adjudicated cases was Arkansas.

In the application of the rule, we are of the opinion that the plaintiff has the right to open and close unless the defendant admits the whole amount of damages claimed by the plaintiff.

It is next insisted that the judgment must be reversed because the court erred in giving instruction No. 6, which reads as follows:

"The court instructs you that, if you find from the evidence that the train was operated at an ordinary rate of speed and that the signals were given, then under the law there could be no liability, and your verdict should be for the defendant."

The vice of this instruction is that it did not submit to the jury the question of keeping a lookout or the question of comparative negligence. This is not like the case of *Davis* v. *Scott,* 151 Ark. 34, 235 S. W. 407, where it was held that it was not necessary to submit to the jury the question of keeping a lookout because the testimony of the engineer that he was keeping a lookout was undisputed and was reasonable and consistent in itself.

Such is not the case here. This case on this point is more like that of *Gregory* v. *Missouri Pacific Rd. Co.,* 168 Ark. 469, 270 S. W. 621. There it was said that, when all the attendant circumstances were considered, the testimony of the employees of the railroad company that they were keeping a lookout could not be said to be undisputed. The court recognized that it was the duty of the driver of the motor bus to look and listen for approaching trains and to stop if necessary to allow such trains to go over the crossing in advance of his motor bus. The court, however, said it was equally the duty of the operators of the train to keep a constant lookout for travelers along the highway, and if the appearance of the motor bus indicated that it was not going to stop for the crossing, the fireman, who saw it approaching, should have signaled the engineer to stop before the motor bus got too close to the crossing.

In the application of the rule to the facts in the present case, it cannot be said that the testimony of the engineer, to the effect that he did not see the truck with the boys in it until he was passing the depot, and that, after he did see it, he did all that he could to stop the train, is undisputed. It is fairly inferable from the evidence adduced in favor of the defendant that the engineer could not see the boys any sooner because his vision was obstructed by the depot, notwithstanding the fact that the track was straight south of the depot. It will be remembered that the engineer testified that he applied the brake in emergency as he was passing the depot and slowed the train down at least five miles an hour before striking the boys at the crossing, which was two hundred feet north of the depot. Witnesses for the plaintiffs, however, testified that they were watching the approach of the train, and that it did not seem to be checked in speed at all. They said that it was going at a rate of speed between fifty-five and sixty miles an hour. The father of one of the boys said that it was going faster than he had ever seen it go. Another witness testified that the engineer admitted to him that he was running the

train at the rate of a mile and a quarter a minute. The engineer admitted on the stand that he was eight minutes behind time and that he was trying to make up lost time. The jury might have inferred from the testimony of the witnesses for the plaintiffs that the engineer could have seen the approaching truck sooner than he did, notwithstanding the depot, if he had been keeping a lookout. The track was practically straight for a mile south of the depot, and there was no other obstruction to the vision of the engineer of the approaching truck except the depot. It was inferable to the jury, when the testimony of all the witnesses is considered in the light of the attendant circumstances, that the engineer could have seen the approaching truck with the boys in it sooner than he did and that he could have slacked the speed of the train so as to avoid striking it, if he had done so. Under these circumstances, it was the duty of the court to have submitted to the jury the question of whether the defendant's engineer was keeping a lookout.

We also call attention to the fact that this instruction closes with the stereotyped phrase ''your verdict should be for the defendant,'' without submitting to it the doctrine of comparative negligence. In *Temple Cotton Oil Co.* v. *Skinner,* 176 Ark. 17, 2 S. W. (2d) 676, it was held that an instruction should be complete in itself when it undertakes to tell the jury when a verdict should be returned for one of the parties, and the court should not instruct the jury that it must find for the plaintiff or the defendant, as the case may be, upon a partial or incomplete statement of the law applicable to the material facts of the case.

We call attention to this question in view of the fact that the judgment must be reversed, and the cause remanded for a new trial, because the court erred in holding that the defendant was entitled to open and close the case in the argument before the jury, and because instruction No. 6 was erroneous in not submitting to the jury the question of keeping a lookout, without deciding whether

the instruction complained of would have been erroneous in leaving out of consideration the question of comparative negligence. In any view of the matter, it would have been better to have left out the concluding part of the instruction to the effect that "your verdict should be for the defendant" unless the question of comparative negligence was also referred to.

For the errors indicated the judgment must be reversed, and the cause will be remanded for a new trial.