MISSOURI PACIFIC RAILROAD COMPANY *v.* TROTTER.

Opinion delivered November 23, 1931.

*Thos. B. Pryor* and *H. L. Ponder,* for appellant.

*John E. Miller* and *C. E. Yingling,* for appellee.

BUTLER, J. Zack Trotter, the appellee, was injured between six and seven o'clock on the 17th day of December, 1930, at the Kennison crossing about one-half mile north of the depot of the appellant company in the town of Judsonia, by the operation of one of appellant's trains.

He brought suit to recover for his injuries and alleged that these were the result of the negligence of defendant's servants, in failing to give the statutory signals of the train's approach, and in failing to keep an efficient lookout, which, if kept, would have disclosed his peril in time to avoid injuring him.

At the close of the testimony adduced at the trial, appellant moved the court for a directed verdict on the theory that the undisputed evidence failed to estab-

lish any negligence on its part in the operation of its train and that it did establish negligence on the part of the appellee. This motion was overruled and the action of the court in failing to direct a verdict in favor of the appellant is the principal assignment of error urged on this appeal. The other errors assigned will be disposed of in our discussion of the principal assignments.

■ *Statutory signals.* The engineer and fireman testified that the whistle was blown for each crossing and the bell continuously rung for more than 80 rods before the Kennison crossing was reached. Their testimony is corroborated by that of a section hand who lived in Judsonia near the crossing and who testified that at 6:45 P. M., the time when the passenger train was due, he was eating supper, and heard the whistle blown for the crossings south of the depot and also the blast usually given for the depot; that he heard the whistle sounded again north of the depot before it reached the Kennison crossing and heard the bell continuously ringing from about the point of the depot on north to the crossing. The section foreman testified in effect that he met the appellee just before he was injured; and about then that he heard the whistle blown and the bell rung as the train approached Judsonia, but that he paid no further attention as to whether or not these signals were given for the Kennison crossing.

All of this testimony is opposed by that only of the appellee, who stated that the whistle was not blown or the bell rung, and he gave as a reason for making this statement that, if the signals were made, he did not hear them. But he did not see the light from the locomotive as he approached the crossing or when he stepped upon it, although the track and right-of-way were in the full glare of a brilliant light. He did not see the light, but it was there. Therefore, his statement that he did not hear the whistle or the bell is entitled to no weight, for it is quite obvious that he was oblivious to his situation, both as to sight and

hearing. In no case that has been brought to our attention has evidence so slight and unsubstantial been held to be of probative value sufficient to contradict the direct testimony of the operatives, corroborated by the testimony of other witnesses. We are therefore of the opinion that the court erred in giving instructions 2, 3 and 6 by which that issue was submitted to the jury.

■ *Negligence of appellee.* The appellant requested the following declaration of law: "The jury are instructed that, if you find from the evidence that the plaintiff failed to look and listen before going upon the crossing of the defendant company, or to take due regard for his own safety, and that his own negligence and carelessness contributed to his injury, then he would not be entitled to recovery, and your verdict should be for the defendant."

It must be conceded that the undisputed facts and the appellee's own testimony convict him of negligence. The injury occurred after nightfall, and as appellant's train approached Judsonia its headlight was burning. This cast a brilliant light down the track for a long distance ahead, its brightest point being about 700 feet ahead of the locomotive and at that place illuminated the track and entire right-of-way with a broad beam of light approximately 100 feet wide. Kennison crossing is 900 feet north of the depot and the track from at least 300 feet south of the depot to the crossing was straight and it and the right-of-way free from obstructions. Therefore the plaintiff had an unobstructed view of the oncoming train at any time after he had gotten on the right-of-way until it reached the crossing, had he looked, and there was nothing to distract his attention or excuse his failure to look. He admitted he walked upon the track without looking or listening for the approach of the train, with his vision obscured by a sack which he was carrying upon his shoulder, and that he failed to observe the light of the approaching train until it was so near that he could not spring aside and save himself from injury. But, since the passage of act No. 156 of the Acts of 1919,

(§ 8575 of Crawford & Moses' Digest), contributory negligence will not bar a recovery unless such negligence is equal or greater than that of the employees of the railway company. *St. L. S. F. R. Co.* v. *Horn,* 168 Ark. 191, 269 S. W. 576; *Gregory* v. *Mo. Pac. Ry. Co.,* 168 Ark. 469, 270 S. W. 621; *Adler* v. *St. L. S. W. Ry. Co.,* 171 Ark. 419, 294 S. W. 729. The court was therefore correct in its refusal to give the instruction requested.

■ *Failure to keep an efficient lookout.* The engineer and fireman testified that they were keeping a constant lookout at the time of the accident, and there is no direct testimony to dispute this. The appellant insists that because of this the court erred in submitting to the jury, by instruction No. 7, the question of whether or not such lookout was kept.

It is true that this was all the direct testimony on that question, and it should not be arbitrarily disregarded by the court or jury, but it was not all of the evidence in the case. As before stated, the appellee was negligent in not seeing the approaching train. The reason that he did not see it was because he did not look. The fireman and engineer testified that they did not see the appellee as he approached the railroad track, while he was upon it, or at any other time as the train approached and passed Kennison crossing, and they did not know of the injury until the following morning.

As a general rule, where an unimpeached witness testifies distinctly and positively to a fact and is not contradicted and there are no circumstances shown from which an inference against the fact testified by the witness can be drawn, that testimony may not be arbitrarily rejected, and the fact will be taken as established. But there are exceptions to this rule: Where the witness is interested in the result of the suit, or where facts are shown which might bias his testimony, or from which an inference may be drawn unfavorable to his testimony or against the fact testified to by him, then such fact can not be said to be undisputed and a case arises for determination by a jury. *Skillern* v. *Baker,* 82 Ark. 86, 100

S. W. 764; *Mutual Life Ins. Co.* v. *Raymond,* 176 Ark. 879, 4 S. W. (2d) 536; *Casteel* v. *Yantis-Harper,* 183 Ark. 475, 36 S. W. (2d) 406.

The same circumstances however which convict the appellee of negligence, dispute the testimony of the trainmen and raise and support an inference against it, which made an issue of fact for the jury.

■ *Negligence of appellee compared with that of appellant.* As we have seen, the undisputed proof in the case establishes the negligence of the appellee, and the jury found that there was negligence on the part of the appellant in the operation of its train, and by its verdict has said that such negligence was greater in degree than. that of the appellee. In the case of *St. L. S. F. R. Co.* v. *McClinton,* 178 Ark. 73, 9 S. W. (2d) 1060, the court held as a matter of law that in any reasonable view of the testimony the negligence of the appellee contributing to his injury was equal in degree to that of the railway company. In that case there was evidence tending to show that the railway company failed to keep an efficient lookout. The appellee was not at the place of his employment when injured, but he was hurt while climbing between two cars. The court said: "No practical lookout which a train crew could maintain would suffice to prevent one from climbing between cars, and the undisputed testimony shows that no member of the train crew saw appellee as he went between the cars, nor is there any testimony or inference therefrom which would support the finding that the railroad company could have done anything which would have averted appellee's injury." Appellee was hurt by the movement of cars while between two which were being switched on the side tracks. The court further said: "Appellee, had he looked, must have known that all the platforms were up, which fact was a warning that switching might be done, and he must necessarily have known there was peril in climbing between cars which might be moved. There is a presumption of negligence arising out of the fact that appellee was injured by the operation of trains, but the undisputed

testimony is such that it must necessarily appear that appellee's negligence was greater than that of the operatives of the train, and this being true, a recovery is not authorized by § 8575 of Crawford & Moses' Digest.''

In *Jemell* v. *St. L. S. W. Ry. Co.*, 178 Ark. 578, 11 S. W. (2d) 449, the court held that the contributory negligence of the plaintiff was greater than that of the crew operating the train which injured him. There the undisputed facts were that the fireman saw the plaintiff approach the crossing and then back down the grade before the accident occurred, and the court held that under the circumstances the fireman was justified in believing that the plaintiff would not attempt to go upon the public crossing until after the train had passed, and therefore there was no negligence shown on the part of the defendant in failing to stop or check the approaching train. It was admitted by the plaintiff that he did not look for the approach of the train, that he could have seen it if he had looked; and, as the facts showed that he could have stopped in time to avoid the accident he was guilty of negligence. Since there was no negligence shown on the part of the defendant, the negligence of the plaintiff was greater than that of the defendant.

In the instant case, however, a different state of facts is presented. The approach on the right-of-way at the crossing was fifty feet on either side of the center of the track; the train was approaching at the rate of 60 miles an hour or 88 feet per second, and the appellee was on the track when he was injured. Therefore, it is reasonable to presume that he was on the right-of-way and approaching the track as the locomotive was passing the depot, and that he could have been seen by the operatives of the train. The train was traveling through a village at a high rate of speed, which made it all the more important for the engineer and fireman to be vigilant in order to avoid injuring any one who might go upon the tracks, and the jury might have believed that, with the track and right-of-way brilliantly lighted, had they been exercising an efficient lookout, they would have

seen and appreciated the danger of appellee in time to prevent his injury. As it was, he almost escaped, and the engineer by slackening the speed of the train but very slightly might have avoided the injury.

In *Davis* v. *Scott,* 151 Ark. 34, 235 S. W. 407, the plaintiff's intestate was killed by the operation of a train, the alleged negligence on the part of the operatives of the train being that it was operated at an unusual rate of speed, that the signals were not given as required by law, that no lookout was kept and no ordinary care taken to prevent the injury after the discovery of the perilous situation. It was shown and the court found as a matter of law that the lookout was kept, and no other negligence was proved except it was held to be a question for the jury as to whether or not the rate of speed at which the train was traveling was negligence which was the proximate cause of the killing. It was proved by the undisputed testimony that the deceased was entirely deaf, but had not entirely lost his powers of speech. He was thirty-five years of age, strong, alert and quick-minded; that he saw the train approaching and attempted to cross the track at a crossing in front of the train and was killed by the locomotive. The court held that the deceased was negligent as a matter of law which negligence directly contributed to his injury. The testimony as to the rate of speed at which the train was traveling was conflicting, the engineer testifying that it was running at the rate of about 25 miles an hour, and the testimony adduced on the part of the plaintiff tending to show that it was traveling at a much higher rate of speed—about thirty-five miles an hour. In discussing this testimony and the relative conduct of the engineer and the deceased, the court said: "If he (deceased) had had only a moment more, he would have crossed in safety, and this extra time might have been afforded by an attempt on the part of the engineer to stop the train at a lower rate of speed than that which was being maintained at the time. * * *

"While the fact was undisputed that deceased was guilty of contributory negligence, the jury might under

the circumstances of the case have found that this negligence was of a lesser degree than that of those operating the train.''

In the instant case the negligence of the appellee was no more flagrant than that of the deceased in the case of *Davis* v. *Scott, supra*. We think the facts are sufficient to justify the inference that the negligence of the appellant was equally as great here as it was in that case, and we are not warranted in holding as a matter of law that the degree of negligence of appellee equaled that of appellant, but are of the opinion that this was a question for the jury which was properly submitted in the instruction given by the court. *Huff* v. *Mo. Pac. Ry. Co., supra; Mo. Pac. Ry. Co.* v. *Rogers, ante* p. 725.

As we have seen, the court erred in submitting to the jury the question of appellant's negligence in failing to give the statutory signals. By submitting that issue the court indicated to the jury that there was evidence tending to establish negligence on the part of the appellant in that particular. What effect this had upon the jury in comparing the negligence of the appellee with that of the appellant, we are unable to say. The jury might have found that the negligence of the appellant in failing to discover the peril of the appellee was greater than that of the appellee in going heedlessly upon the track, and again it might have found that this negligence was not equal to that of appellee, but that appellant's negligence in that regard, coupled with the failure to blow the whistle and sound the bell, made its negligence greater than that of the appellee and warranted a recovery. The error indicated was prejudicial to the appellant, and for this error the judgment must be reversed, and the cause remanded for a new trial. It is so ordered.