# MISSOURI PACIFIC RAILROAD COMPANY v. LIGON SPECIALIZED HAULERS, INC.

5-5296                          455 S. W. 2d 663

### Opinion delivered June 29, 1970

*Smith, Williams, Friday & Bowen,* for appellant.

*Hardin & Richard,* for appellee.

J. FRED JONES, Justice. This appeal by the Missouri Pacific Railroad Company questions the validity of a judgment rendered against it by the Saline County Circuit Court, on a jury verdict, in favor of the plaintiff appellee, Ligon Specialized Haulers, Inc. for damages to a flat-bed trailer in the amount of $4,603.57.

The recorded facts are briefly these: About 1:00 a.m. on November 25, 1968, the appellee's truck driver, George Caster, drove the appellee's truck tractor pulling a 40 foot trailer loaded with masonite and plywood, across the appellant's railroad track at the Neeley Street crossing in Benton, Arkansas. This particular

crossing is slightly elevated in that the rails and cross-
ties are higher than the surrounding area, requiring
traffic traveling in either direction on Neeley Street to
go up an incline to the actual railroad rails in crossing
the tracks. The appellee's 40 foot trailer was equipped
with "dolly wheels" protruding down from the front
portion of the trailer, and a metal tool box, built to
the underside, along the middle of the trailer. As ap-
pellee's tractor and trailer crossed the railroad, the
dolly wheels hung on the crossing as the tractor started
downgrade after crossing the track, and the tool box
near the center of the trailer became firmly lodged on
the asphalt street surface between the railroad rails at
the crossing. In other words, the loaded trailer was too
long and too low for this elevated crossing, and the
trailer became more or less balanced across the railroad
track in such manner that the drive wheels of the
tractor lacked sufficient traction to dislodge the trailer
and either pull or back it from the crossing. While the
appellee's trailer was thus stranded, and about four
minutes after it became so, the appellant's train round-
ed a curve about 700 or 800 feet from the crossing and
struck the trailer.

Ligon, Inc. sued Missouri Pacific and its engineer
J. F. Rose for the damages to its trailer allegedly
caused as a proximate result of the railroad's negli-
gence in failure to keep a proper lookout; failure to
properly apply the brakes; failure to stop within a safe
distance; failure to give a warning signal; and failure
to take emergency precautions to avoid the occurrence
after the helpless condition of said truck was observed
or should have been observed. The railroad company
and its engineer filed answers of general denial and the
railroad counterclaimed for damages to its locomotive
in the amount of $5,796.84 as a direct result of the
plaintiff's negligence in operating a vehicle that did not
have proper clearance; in attempting to cross the tracks
after such defective clearance had become apparent;
in failure to take reasonable steps to warn the approach-
ing train of the presence of the trailer; and in other-
wise failing to exercise ordinary care for its safety and

the safety of others. Ligon's complaint was amended to allege that the engineer J. F. Rose was guilty of negligence in operating a train at a speed too great for the circumstances then and there existing.

By stipulation the parties agreed that Ligon, Inc. sustained damage to its truck in the amount of $4,603.57, and that Missouri Pacific sustained damage to its diesel unit in the amount of $5,796.84. The trial court granted a motion for a directed verdict for the defendant J. F. Rose on the ground that there was no evidence to establish a jury question on his being independently and individually liable under the complaint and the amendments thereto. The propriety of this procedure is not questioned. The case was presented to the jury on the sole issue of alleged negligence of the railroad company in operating its train at a high speed. Trial resulted in a verdict and judgment for Ligon, Inc. as already stated and Missouri Pacific relies on the following points for reversal:

"The trial court should have directed a verdict for the defendant, Missouri Pacific Railroad Company, on the complaint on the grounds that there was no substantial evidence upon which a jury question could be made regarding the allegation of excessive speed, and there was no causal connection between the speed of the train and the accident.

The court erred in giving plaintiff's requested instruction No. 16 on speed."

We are of the opinion that the court erred in its failure to direct a verdict for the defendant Missouri Pacific for the reason that there was no causal connection between the speed of the train and the accident in this case. Having reached this conclusion, the propriety of plaintiff's instruction No. 16 becomes moot and we do not reach it.

Mr. Richard Parnell testified that he had been employed as a truck driver by Ligon, Inc. for eight or nine

years and that on the night of the accident he crossed the Neeley Street crossing with his truck immediately ahead of George Caster. He testified that both trucks were loaded but that the wheels on his trailer were spaced farther apart than the ones on Caster's trailer and that the tool box on his trailer was between the spaced wheels, whereas the tool box on Caster's trailer was in the middle of the trailer. He testified that after he crossed the railroad track and pulled into a parking lot, he looked back and saw that Caster's truck was hung on the railroad crossing. He says that he and his relief driver started to back their rig up to Caster's rig in an attempt to pull it off the track, but that before he could get hooked up to Caster's truck, he heard the whistle of a train and saw the lights coming. He says that at that time Mr. Caster had walked down the tracks with his flashlight for the purpose of signaling a train in the event one would come through. He says that when he saw the train coming, he attempted to move his truck out of the way and had moved it approximately 10 feet when the train struck Caster's trailer. He says that fuzees and flares are carried in the Ligon, Inc. trucks but that no effort was made to put one out in this instance.

Mr. J. F. Rose, the engineer, testified that on the night in question the train was traveling from Little Rock to Texarkana; that his maximum permissible speed was 79 miles an hour, and he was traveling 78 miles an hour. He says that they approached the Neeley Street crossing out of a curve which was not sharp enough to require a reduction in speed. He says that he observed no flares or reflector lights on the truck and did not see anyone attempting to flag him with a flashlight. He testified that the Neeley Street crossing came into view after rounding a curve 700 or 800 feet from the crossing, but that on the night in question he did not know, or could not tell, that the truck trailer was across the track until he saw its outline when about 400 feet from the crossing. Mr. Rose testified that it would have taken approximately three-quarters of a mile to stop the train when the brakes were applied in emergen-

cy, and that he could not have stopped the train in a shorter distance than three-quarters of a mile at the speed he was traveling. The appellee's trailer was a flat-bed trailer and engineer Rose testified that he was unable to see it and determine that it was on the track, until it was in the view of his headlight.

There is no question in this case that the limit of permissible speed through the Neeley Street crossing was 79 miles per hour, and that the train was traveling within the permissible speed limit. Engineer Rose testified without contradiction that it would take three-quarters of a mile to stop the train at the speed of 78 miles per hour, and that the Neeley Street crossing only became visible 700 or 800 feet after emerging from a curve in the railroad track. It must be remembered in this case that the railroad company owned its tracks and had a right to use its railroad for the purpose it was built. The railroad company had the same right to cross Neeley Street with its trains as Ligon, Inc. had to cross the railroad with its tractors and trailers. *Missouri Pacific R.R. Co. v. Nelson,* 195 Ark. 883, 115 S. W. 2d 872. As a practical, common sense matter, if railroad companies were required to operate trains at a speed commensurate with any dangerous situation that might be created by members of the traveling public at street or highway crossings; then the railroads could never maintain any sort of time schedule in the operation of trains, and commerce over railroad systems would become impossible.

It is true, in the case at bar, that the Neeley Street crossing was a busy crossing where many motor vehicles per day crossed the railroad. There is nothing in the record, however, to indicate that the Ligon, Inc. tractor and trailer would not have safely crossed the railroad, even after the train's headlight became visible and its whistle and bell became audible, had the trailer not become hung up on the crossing. Neither is there evidence that Mr. Caster, the truck driver, would have attempted to cross the track had the train headlight been visible or its whistle and bell been audible as the

tractor and trailer approached the crossing. In other words, there is no evidence whatever that this collision would have occurred had Caster not attempted to cross the elevated tracks on Neeley Street with his low and heavily loaded 40 foot trailer which became more or less balanced across the railroad track. Neither is there any evidence in the record before us that the railroad company or its engineers would or should anticipate, or be expected to anticipate, that anyone using the Neeley Street crossing would attempt to pull a 40 foot trailer with a tool box compartment under its middle, across the tracks at this crossing. In other words, the railroad company had a right to anticipate and believe that motorists using the Neeley Street crossing would either wait a safe distance from the crossing for approaching trains they would see or hear coming; or that they would cross the tracks without delay ahead of approaching trains they could not see or hear coming.

We agree with the appellee that there may be fact situations in which the speed of a train may constitute questions of negligence for jury determination, but we hold that such is not the situation in the case at bar. There is no evidence in the record before us that the train was traveling off schedule and at an *unusual* speed as was the situation in *Davis* v. *Scott*, 151 Ark. 34, 235 S. W. 407, cited by the appellee. In the case at bar the train was traveling on schedule and at the usual rate of speed. The record is clear, as we view it, that the proximate cause of the accident and resulting damage in the case at bar, was the unusual position of the appellee's trailer on the appellant's railroad track and not the unusual speed of the appellant's train.

The judgment of the trial court is reversed and this cause dismissed.

BYRD, J., dissents.

CONLEY BYRD, Justice, dissenting. We have a statute in Arkansas, Ark. Stat. Ann. § 73-1002 (Supp. 1969), that provides:

"It shall be the duty of all persons running trains in this State upon any railroad, to keep a constant lookout for all persons, including licensees and trespassers, and property upon the track of any and all railroads, and if any such persons or property shall be killed or injured by the neglect of any employee of any railroad to keep such lookout, the company owning or operating any such railroad or its agents, servants, and employees, shall be liable and responsible to the person injured for all damages resulting from neglect to keep such lookout. . . ."

It seems ridiculous to me that we can say that speed is not a question of fact for the jury under the circumstances here involved where the lookout while approaching heavily traveled highway crossings at the speed authorized by the Railroad Company furnishes the operators of a train no operable information other than to inform them of the inevitable fact that they will hit appellee's truck. What good is a lookout at a highway crossing if at the time visibility is possible one is traveling at such speed that stopping is impossible and a collision is inevitable? The logic fails me.

Furthermore, I point out that on objection of the railroad, evidence of other similar accidents at the crossing was excluded. In *Ford Motor Company* v. *Tritt*, 244 Ark. 890 A, 430 S. W. 2d 778 (1968), we held that where one is successful in excluding such evidence before the trial court, he is estopped on appeal to say that the evidence is insufficient when the excluded evidence would make a question of facts for the fact finder.

For these reasons I would affirm.