NEW YORK HOTEL COMPANY *v.* PALMER.

Ouinion delivered May 14, 1923.

1. INNKEEPER—LIABILITY OF BATH-HOUSE KEEPER FOR LOSS OF PTOP-ERTY.—Crawford & Moses' Dig., § 5564, providing, in substance, that a hotel keeper who constantly maintains a metal safe or suitable vault for the custody of money, jewelry and other valuable articles for the use of guests, and who keeps suitable locks or bolts on the doors of sleeping rooms, shall not be liable for such valuables unless delivered to the hotel keeper for safekeeping in the safe or vault, nor in any event shall be required to accept for safekeeping property in excess of $300 in value, *held* not applicable to a bathroom operated under the same roof but apart from the hotel, where the keeper furnished lockers to bathers for their valuables.

2. NEGLIGENCE—SUFFICIENCY OF EVIDENCE.—In an action by a patron against the keeper of a bath-house for negligence in failing to exercise proper care to prevent loss of his valuables after notice of loss of his key, where it was purely a matter of speculation whether the defendant was notified of the loss of the key in time to have prevented the theft of his valuables from the locker, a verdict for the plaintiff will be set aside.

3. NEGLIGENCE—BURDEN OF PROOF.—In an action against a hotel company by a guest for loss of money from a locker in a bath house run in connection with the hotel, the burden of proving negligence on defendant's part rested on plaintiff.

Appeal from Garland Circuit Court; *Scott Wood,* Judge; reversed.

*Martin, Wootton & Martin,* for appellant.

The verdict is not supported by the testimony. 70 Ark. 385; 70 Ark. 608; 96 S. W. 353; 82 Ark. 372; 118 Ark. 349; 123 Ark. 447. No negligence of appellant was shown. It was only a gratuitous bailee. 11 Ark. 189; 52 Ark. 364; 144 Ark. 146. If bailment was for mutual benefit, appellant would have been bound only to the use of ordinary care. 136 Ark. 503; 61 Ark. 302; *Bertig v. Norman,* 101 Ark. 75. The rule of 60 Ark. 62 is not applicable to the facts of the case. Hotel keeper's liability limited by statute, and the court erred in refusing appellant's requested instructions Nos. 3, 4 and 12. Secs. 5564, 5565 and 5567, Crawford & Moses' Digest. This statute was passed to change the rule of the common law which held an innkeeper liable as an insurer of his guest's property. 103 Ark. 593, 42 L. R. A. (N. S.) 122. Innkeeper defined. Hale on Bailments & Carriers, 254; 2 Parsons on Contracts, 157; Bishop's Noncontract Law, sec. 1165; 16 Am. & Eng. Enc. Law, 508; 33 N. H. 553; 4 Hump. (Tenn.) 179; 14 Johns (N. Y.) 175; 91 Me. 274, 40 L. R. A. 491; 6 L. R. A. (N. S.) 828; 136 Ark. 503.

*C. Floyd Huff,* for appellant.

The verdict is amply supported by the evidence, and cases cited by appellant not applicable herein. Secs. 5559-5573, C. & M. Digest, have no application to keepers of bath-houses, and no error was committed in refusing instructions.

McCulloch, C. J. Appellant is a corporation, which owns and operates the Eastman Hotel in the city of Hot Springs, and it also operates, in connection with the hotel and under the same roof, a public bath-house for the use of the patrons of the hotel. Appellee was a guest at the Eastman Hotel in February, 1921, and patronized the bath-house, and claims that he deposited in a lock-box in the bath-house the sum of $427 in currency, together with other valuable articles, and that the money was taken from the lock-box by some one other than himself while he was taking his bath. He instituted this

action against appellant to recover for the loss of the money, and charges negligence on the part of those in the management of the bath-house.

There are conflicts in the testimony upon some of the material points, but in many respects there is no conflict.

There is a contention here that the evidence does not support the verdict, and in testing the sufficiency of the evidence we must resolve all conflicts in favor of appellee's side, and view the testimony in the light most favorable to appellee.

The Eastman Hotel is a large establishment, and, as before stated, there is a bath-room maintained under the same roof for the benefit of the guests. It is a public bath-room, and additional charges are made by the management for the bathing privilege, but the management does not cater to outside business other than guests of the hotel. The bath-house is under the general control of the manager of the hotel, but it is under the immediate control and management of a lady manager, Mrs. James. Guests at the hotel apply at the desk of Mrs. James in the bath-house for bath tickets, either single, or for what is known as a "season," which is twenty-one baths. After a guest has purchased his bath-ticket, the ticket is placed in a rack, along with others, and when a guest comes for his first bath he gives his ticket to the manager, and she takes the ticket and punches the ticket, indicating one of the baths being taken, and then gives the guest a check, to be handed to the attendant when he enters the bath-room. The check is taken up by the attendant, and used in his settlement with the management for his services, as it indicates the number of patrons he has attended at bath. This is the procedure every time a guest goes into bath.

The testimony shows that in the busy season, as the condition existed when appellee was a guest, usually five or six hundred people bathe there every day.

The management maintained in the bath-house a lot of lock-boxes for patrons to use in taking care of

valuables while bathing. These boxes are constructed of steel, and each has two keys—one, the original, which is left in the lock, except while in the possession of the patron, and the other, the duplicate, is kept in the safe in the hotel office. These duplicates are only taken out of the safe in case of loss of an original. Each box has a separate key, and no box can be unlocked except by the particular key furnished for it. The method pursued was for the guest, when he was ready to go into the bath-room, to go to this line of boxes and take possession of any one where the door was open and the key in the lock. He deposited his valuables, locked the door, and took the key. There was in vogue the following method for a bather to keep the key on his person: A heavy rubber band was used, and it was looped through the eye or hole in the key, and, after the loop had been drawn tightly, the band was placed over the bather's wrist. When properly put on the wrist, the key could not become detached without breaking the band. These bands were carefully examined daily by the lady manager, Mrs. James, for the purpose of seeing that they were intact and would not break so as to lose a key.

On the occasion in question appellee had arranged with an acquaintance, who was also a guest in the hotel, that they would go to bath together, and that their wives should also go to bath in company with each other. Appellee undressed in his room, and, not being informed about the use of the lock-boxes, he secreted his money and other valuables in some place about his room, but when his friend, Mr. Fish, came by and rapped on his door, and as they were about to depart for the bath-room, Fish reminded him that there were lock-boxes provided, and he got his valuables, and the two went to the bath-house together. The two ladies had, before that time, proceeded to the ladies' bath-rooms.

Appellee had, in addition to his money ($427) two watches, his own and his wife's, both being very valuable. The testimony showed that the two watches were

worth about $1,000. They went to the manager's desk in the bath-room, as usual, and obtained bath-tickets, and then took possession of lock-boxes for the purpose of depositing their valuables. Appellee selected box number 3, finding the key in the door, and Fish took the adjoining box. Appellee walked from there and entered the bathing department at the door of the cooling room, where he was met by a bath attendant who was to serve him during his course of baths, and was led through this cooling room to the bath-room and conducted to a bathtub. While he was taking off his bath-robe and undergarments, he discovered that the key was gone. He testified that the key was on the band when he put the band on his wrist, and that when the loss of the key was discovered the band was intact on his wrist. He made mention of his loss to his attendant, a negro named Gill, and told him to report it at the office, and proceeded to get into the bathtub. Gill went off, and came back in a little while and informed appellee that he had notified the manager at the office of the loss of the key.

Appellee was asked how long it was from the time he put the rubber band with the key attached on his wrist at the place where the lock-boxes were situated until he discovered the loss of the key at the bathtub, and he said it was just long enough time for him to walk to the door of the cooling room and through that room to the bath-room and thence to the tub, which he thought was about a minute. Appellee stated, in his examination in chief, that he told Gill the number of his lock-box key at the time he told him about its loss, but Gill denied this, and stated that appellee did not remember the number of his key, and inquired of Fish, who was occupying a tub a short distance away. Appellee was subsequently recalled to the stand and asked again the direct question whether he had stated to Gill what the number of his key was, and his reply was as follows: "I don't recall what I said to him, except that I had lost my key, and if

he asked me what the number of my box was, I certainly told him the number of the box."

Appellee proceeded with his bath and the cooling process which followed, and, after having finished the process, in about an hour, he went to the office and inquired of Mrs. James whether or not his key had been found. He elicited the information that the key had not been found, and, at his request, Mrs. James went over to the hotel office and secured the duplicate key and they opened the box together, and there was no money in it. Mrs. James testified that she was present and unlocked the box and saw him take out the contents, and that the watches were there, and perhaps some other valuables, but no money. Neither Mrs. James nor any one else connected with the bath-house saw appellee put the money in the box, but he testified that he put the money in there, and Mr. Fish also testified that he saw appellee put the money in the box. There was testimony to the effect that there were two keys lost on this occasion, but the other key was found by the bather who lost it.

Mrs. James testified that another attendant, named Colonel, reported that a gentleman had lost his key to lock-box number 7. She testified that Gill did not give her the number of the lost key which he reported, but merely reported that "the gentleman had lost his key," and she supposed that only one key had been lost, the same reported by Gill and Colonel. She testified that, after receiving notice of the loss of what she supposed to be one key, the one to lock-box number 7, she kept a lookout and saw from her desk a gentleman come from the bath-room and go to lock-box number 7 and open it, and she called out to him and stated that she understood that he had lost his key, and he replied that he had lost it but afterwards found it in his pants pocket. She stated that she thought that was the only key that had been lost, and supposed that the incident was thereby closed, until appellee came from the bath-room and reported that his key had also been lost. She stated that appel-

lee did not know what his number was, but it was determined by the fact that Fish's box was next to it. The key which appellee claims to have lost has never been found, so far as is disclosed by the testimony in the case.

It is undisputed that this method of affording protection to patrons of the bath-house in preserving their valuables and in providing a method for them to keep the keys on their persons has been in vogue a great many years at all the bath-houses in Hot Springs, and has been approved by the superintendent of the Government Reservation. It is undisputed that this is an adequate system, and that it affords ample protection to the patrons of bath-houses. There is no charge made that the system was inadequate, and it is very clear that a guest could not suffer loss of valuables if he or she execised ordinary care in locking the box and keeping the key. Mr. Chester, the manager of the hotel, testified that he had been using that system at the Arlington Hotel for thirty-nine years and had never before had an instance of a lock-box key being lost off the band to which it was attached.

The sole ground of appellee's charge of negligence, on which he bases his right to recover, is that the manager of the bath-house failed to exercise care, after receiving notice of the loss of the key, to prevent the finder of the key from taking the valuables out of the box. The theory of appellee is that the key was lost when he put the band on his wrist, and that some time thereafter the key was found by another person, and the box was opened and the money taken therefrom. This is the only theory upon which there could be a recovery, for, as before stated, there was no negligence in devising the lock-boxes and the system of preserving the valuables. If the key was lost by appellee, as he claims, the loss necessarily resulted from his own negligence, for, if he had put the band on his wrist in the ordinary way, as intended, the key could not have been lost without the rubber band breaking and dropping from his wrist.

In other words, if the key was not lost and the loss reported to the management, there could be no liability on the part of appellant, but if the key was lost, as claimed by appellee, even through his own negligence, if its loss was reported to the management, and the valuables were thereafter taken from the lock-box by the finder of the key, by reason of negligence of the management in failing to exercise proper care to prevent it, there would be liability.

It is contended, in the first place, as grounds for reversal, that the liability of appellant is restricted by the statute which was enacted by the General Assembly of 1913 for the purpose of regulating the liability of hotel-keepers. Crawford & Moses' Digest, § 5564 *et seq.* This statute provides, in substance, that a hotel-keeper who constantly maintains a metal safe or suitable vault for the custody of money, jewelry and other valuable articles for the use of guests, and who keeps suitable locks or bolts on the doors of sleeping-rooms, shall not be liable for such valuables unless delivered to the hotel-keeper for safekeeping in the safe or vault, and that in no event shall a hotel-keeper be required to accept for safekeeping property in excess of $300 in value. There are other requirements restricting this liability which it is unnecessary to mention. The contention of counsel for appellant is that the bath-house was maintained merely as an incident to the hotel, and that appellant's liability in the operation of the bath-house is controlled by the statute referred to above. Authorities are cited in the brief which tend to establish the rule that an innkeeper may be held liable as such for the loss of valuables of guests while bathing or while in the bath-room, but we do not think that these cases are applicable to the present one. It is true that the proof shows that appellant operated this bath-house for the benefit of its guests, and it was under the same roof as the hotel, but it was operated as a bath-house and not as a hotel, and other and distinct methods were provided for the keeping of valuables.

Liability is not sought to be established in this case upon any statutory or common-law duty resting upon appellant, either as a hotel-keeper or as a bath-house keeper, but, as before stated, the liability, if it exists at all, must rest upon appellant, not as a bailee or depository who has failed to account for the articles, but upon its alleged negligence in failing to exercise proper care to prevent loss after notice had been given of the loss of the key. It is not contended, and cannot be contended, that appellant had not discharged its full duty to patrons of the bath-house in furnishing adequate facilities for the preservation of valuable articles while a patron is in the bath, and, unless there is sufficient evidence to show that there was negligence on the part of the manager, after being notified of the loss of the key, and that the loss of the valuables resulted from that negligence, there is no liability.

So we conclude that the contention of counsel for appellant that error was committed in refusing to give requested instructions concerning the effect of the statute regulating the liability of innkeepers, is not tenable, and that there was no error committed by the court in this respect.

It is not contended that there are any other errors in the charge to the jury, and the only other ground urged for reversal is that the evidence is not sufficient to support the verdict. We have reached the conclusion, after careful consideration of the testimony in the case, that counsel for appellant is correct in the insistence that the verdict is not supported by the evidence. We accept the testimony in its strongest light most favorable to appellee, and, testing it in that light, we think it does not show that appellant was negligent, or, at least, that the loss of the valuables resulted from such negligence.

It is somewhat difficult to understand just how the key could have been lost from the rubber band which was placed around appellee's wrist as soon as he had locked

the box.   He states in his testimony a theory furnishing an explanation, which doubtless the jury accepted in reaching the conclusion that appellee in fact lost the key from the rubber band.   Appellee does not undertake to say that the key was lost in that way, but he explained it as a probability, and as the only means by which the key could have been lost.   In the presence of the jury he took a rubber band and illustrated how the key was attached by showing that the band was thrust through the hole in the handle of the key and then looped, and the loop drawn tight.   He thus explained that it was possible for the loop, instead of being drawn tight, to have been loose, and that in thrusting his hand through the band he thrust it through the loop instead of through the other end of the band, and that when the band tightened around his wrist the loop end necessarily came loose, and the key was released and dropped to the floor. He says that in that event the key must have dropped to the floor just as soon as he put the band on his wrist, and while he was standing at the place where he had locked the box.   This explanation is not altogether lacking in plausibility, and we think that it made a question for the jury to determine whether or not in fact the appellee lost the key from the rubber band.   If it was not lost in that way, it was not lost at all, but must have been intentionally detached from the band.   The jury evidently found, and the evidence justifies the finding, that the key was lost in the manner described.   The loss of the key this way necessarily resulted, as we have already shown, from negligence of appellee in putting the rubber band around his wrist.   It was a simple device, and he could see that, in order to retain the key on the band. it was necessary that the loop should be drawn tight and his hand thrust through the other end of the band, and not through the loosened loop.   He must have known, in other words, that if he failed to tighten the loop the key would drop off, and he was negligent in not attaching it. correctly so as to retain the key.   If he had done so, all the witnesses agree that there was no possible way for

the key to have gotten off the band without the band being broken, and it is also undisputed that, when the loss of the key was discovered, the band was intact around appellee's wrist. Now, if, as the jury necessarily found, the key was lost through the negligence of appellee in placing the band around his wrist while he stood at the lock-box, it devolved upon him, in order to establish liability of appellant, to show that the money was taken from the box after notice was given at the manager's office, and that this resulted through the negligence of the manager in failing to take proper steps to prevent appellee's box being robbed after this notice had been given. Appellee claims, in his testimony, that only about a minute elapsed before he discovered the loss of the key, and that he at once notified the attendant, Gill, and sent him off to the office to warn the manager. The attendant, Gill, was introduced as a witness, and he testified that, as soon as appellee told him about the loss of the key, he walked back through the cooling room, telling the other attendants that "the gentleman has lost his key," and went to the office and notified the manager. Gill testified that it was several minutes from the time that appellee left the lock-boxes to the time that he (witness) reached the office and notified the manager of the loss of the key. Appellee, in his final testimony, does not claim to remember that he told the attendant, Gill, the number of the box, and Gill swears positively that appellee did not tell him the number of the box, but merely told him that he had lost the key.

Now, if the key was lost at all, the loss occurred, as appellee says, at the location of the boxes, and it is not improbable, if such is the case, that some one picked up the key immediately after it dropped to the floor. The undisputed testimony is that five or six hundred people were bathing there daily and that the patrons of the bath-house were constantly coming and going. It is not improbable that the money was taken from the box in a very short space of time, possibly not exceeding a minute or two, after the key was dropped to the floor. It

devolved upon appellee to show that the money was lost after notice was received at the office by Mrs. James, and it was purely a matter of speculation as to when the money was taken from the box. The jury had no right to speculate upon this important feature of the case, as the verdict must at least rest upon reasonable inferences of fact and not upon mere conjecture.

Appellant, having furnished its patrons adequate provision for the care of valuables, before it can be held liable it ought to be shown by something more than mere conjecture that the valuables were lost after the duty was put upon it, by notice of the loss of the key, to exercise special care to prevent the finder of the key from wrongfully taking the valuables out of the box. We are of the opinion that, in this respect, the evidence lacks definiteness and certainty sufficient to warrant a finding that the loss resulted from negligence of the management of the bath-house.

It is to some extent a matter of speculation as to the precise length of time which elapsed between the loss of the key and the report of it to the office. Appellee states that it was about a minute, and that it was necessarily a matter of opinion largely, for he did not have in mind the loss of the key as he passed along to the bathing departments, that is, into the cooling room, and it might have taken more time than he says. But, at any rate, it is reasonably certain that at least two minutes elapsed before the time the key was lost and the time it was reported to the office, and there is nothing to show that the loss occurred after that time and not before. In no phase of this case does the burden of proof rest upon appellant, but, on the other hand, it rests upon appellee to make out his case of negligence and loss resulting from such negligence. If there is any failure of proof, the effect of such failure must fall upon the party who must produce it.

The judgment is therefore reversed, and, since the case has been fully developed, judgment absolute will be entered here in favor of appellant.