DICKINSON, RECEIVER CHICAGO, R. I. & PAC. RY. CO. *v.*

BRUMMETT.

Opinion delivered March 4, 1918.

1. MASTER AND SERVANT—INJURY TO SERVANT—SUFFICIENCY OF THE EVIDENCE.—In an action for damages for personal injuries by reason of the falling of a door upon plaintiff, due to negligence, *held,* the evidence was sufficient to sustain a verdict in favor of the plaintiff.

2. DAMAGES—PERSONAL INJURY ACTION—SUFFICIENCY OF THE EVIDENCE.—In an action for damages growing out of personal injuries, *held,* the amount of the verdict. under the evidence was not excessive.

Appeal from Prairie Circuit Court; *Thos. C. Trimble,* Judge; affirmed.

*Thos. S. Buzbee* and *Geo. B. Pugh,* for appellant.

1. The verdict is against the evidence. 79 Ark. 608; 123 *Id.* 428.

2. The verdict is excessive. 117 Ark. 47; 106 *Id.* 177.

*Pace, Seawel & Davis,* for appellee.

1. The verdict is sustained by the evidence.

2. The verdict is not excessive. The damages awarded are indeed moderate. 95 Ark. 310.

### STATEMENT OF FACTS.

The appellee brought this action against the appellant to recover damages for alleged personal injuries. He alleged that appellant was engaged in interstate commerce and that he was in appellant's employ; and at the time of the injury was himself engaged in interstate commerce. He alleged that he was employed in the capacity of car repairer, and that on the day of the injury he and other employees were directed by their foreman to place a door on a stock car; that he was directed by the foreman to use a pinch bar to assist in prizing the door which was being held in position by the other employees; that in obedience to the order he placed one end of the pinch bar on a door track underneath the door and supported the other end with his shoulder; that while he was prizing the lower end of it with a pinch bar the foreman without warning of any kind negligently struck the door with a heavy maul and the other members of the crew negligently without warning turned loose the door, throwing the weight of the heavy door upon him, thereby seriously and permanently injuring his back, spine and hip.

The appellant denied the allegations of the complaint as to negligence and set up the defense of contributory negligence.

The facts which the evidence tended to prove as detailed by the appellee and his witnesses are substantially as follows: "The appellee while prizing at the door with a pinch bar trying to force the top of the door into a groove so as to get the bottom of the door onto a track upon which it was to run, had his back sprained."

Appellee in his testimony says: "We went over to help put the car door on and picked up the door with our hands and put it in the groove at the top, and tried to put it on the track at the bottom, but it lacked about an inch going on to the track. Mr. Hall (the foreman) told me to get a bar and prize the door up so it would go on. I picked up the bar and put one end of the bar on my left shoulder, and then raised up. Then Mr. Hall hit the

door with a maul. When he hit the door with the maul I noticed the weight come down to me. I had my back to Mr. Hall, but as he hit the door I noticed John Melton turn the door loose. When the door went in place the bar fell off of my shoulder and I straightened up and walked back to the car where Mr. Melton and myself had been working, which was about a car and a half from the car where we had put in the door. We had taken off an end sill and I told Mr. Melton that a man that was strained like I was didn't have to work any more."

The door weighed 500 or 600 pounds. No warning was given by the foreman that he was going to strike the door. Appellee was in a stooping position with the bar resting on the track and the door resting on the end of the bar and the other end resting on his shoulder. Appellee could not hold the door with the pinch bar when the others turned it loose. Appellee had helped to put in dry box car doors before but had never helped to put in a door of this kind. There was nothing to support the door from the top. If appellee had known that the foreman was going to strike the door and that the others were going to turn loose he would have turned loose himself.

The ground sloped away from the track and one had to stand still further down hill so that the bar was in a slanting position, the end resting upon his shoulder being lower than the one underneath the door.

The testimony of two witnesses, who were employees and engaged in assisting appellee in placing the door, was to the effect that when Hall struck the door it moved down towards Brummett. They were exerting their strength to lift the door high enough to get it in the track; when they saw that Hall was going to strike the door they turned it loose, and there was nothing to hold the door except Brummett and his pinch bar. They turned it loose because they thought it would jar and jerk. They had been lifting as hard as they could. They could not push it in.

A door was exhibited to the jury and the witnesses demonstrated before the jury the attitude of the appellee

and those who were lifting the door and assisting putting the same in place. The door they had for the purpose of making the demonstration was the same size but not as heavy as the original door. One of the witnesses stated that the original weighed about five or six hundred pounds.

After the door had been put in place appellee stated that his back was strained and did not think that he would do much more work at that time.

There was testimony on behalf of the appellant tending to prove that the door would weigh about three hundred pounds, that the door was tight and failed to go in; when the door failed to go in, the usual way was to force it in by tapping the same in place with a maul. When the door was in the groove at the top and one end was in the casing at the bottom it would not fall out even if no one was holding it. The crew that were called on to assist consisted of six men, when one or two to lift was sufficient. Nobody complained about being hurt there that evening. One of the witnesses for the appellant stated, "I helped make the door and we summoned enough men to put it up. We took hold of the door and lifted it up in the groove at the top. When we placed the shoe on the left side of the track. I was standing near the center of the door. We tried to put the door in but it was too tight and Brummett picked up the bar and tried to force it in. Mr. Hall hit it with a maul. Hall said, "Prize it up." Then he picked up a maul to strike it. Mr. Hall said, "Some one get a pinch bar and let us see if we can't drive it in.'" Nobody expressed any surprise at his hitting it with the maul. With the top of the door in the groove and the left end in the track, the door would stand there." The jury returned a verdict in favor of the appellee for $10,-000. Judgment was rendered in his favor for that sum and it is sought by this appeal to reverse the judgment. Other facts stated in the opinion.

WOOD, J., (after stating the facts). Appellant contends that the judgment should be reversed upon two grounds:

*First.* That the evidence is insufficient to sustain the verdict. Learned counsel for appellant urge that the testimony demonstrates to a mathematical certainty that appellee could not have been injured in the manner and to the extent claimed by him, for the reason, they say, ''that Hall was the only credible witness as to the weight of the door and he testified that it weighed about three hundred pounds.'' This, they say, would make the weight on the man's shoulder only sixty pounds. They argue, therefore, that the verdict is contrary to the physical facts. They arrive at this conclusion upon the calculation ''that if one end of the bar, thirty inches long, is supported by a man's shoulder and the other end is resting upon a fixed object and a weight of 300 pounds is placed upon the bar with the center of the weight six inches from the end which is resting upon the fixed object, the weight upon the man's shoulder will be six-thirtieths of the total weight,'' or sixty pounds. Appellee testified ''that the door was two inches thick and that it was back on the bar about six or eight inches from the point where the bar was resting on the track; that the bar was about thirty inches long.''

But appellee also testified that the door weighed five or six hundred pounds. That he was in a stooping attitude and on sloping ground. That one end of the bar under the door was not as low as the other end. That when Hall hit the door with the maul the weight came down towards appellee. That other witnesses who were assisting in sustaining the weight of the door turned loose when Hall struck the same. Now it appears to us from the above testimony that counsel's calculation and conclusion are not demonstrated as physical facts. Therefore, should this court concur in the conclusion reached by counsel it would necessarily invade the province of the jury. For it is a question for the jury to determine as to the weight of the door and as to what weight came down upon the appellee when those who were assisting to sustain such weight suddenly loosed their hold. Certainly this court could not be expected to say as a matter of law that the uncontroverted evidence established as a physical

fact that a weight of only sixty pounds fell upon appellee under the circumstances detailed by the witnesses. It is not for this court to say that Hall was the only credible witness. The issue as to the credibility of appellant's witness, Hall, and of the appellee and his witness, Webb, was one peculiarly for the jury to pass upon. But even if Hall were the only credible witness as to the weight of the door as claimed by appellant's counsel it would still be an issue for the jury as to whether or not sufficient weight was thrown upon appellee, under the facts stated above, to produce the injury of which he complains.

Even the witness Hall does not contradict the testimony on behalf of the appellee to the effect that he struck the door without warning and that when·he did so they turned the same loose leaving appellee to sustain the weight, whatever that weight was. Hall only says, "I did not see a man turn loose the door. The witnesses for the appellee show that they were exerting their full strength and that when they turned loose," "there was nothing to hold the door except appellee and his pinch bar."

(1) Considering the sloping ground, appellee's stooping position, the fact that the end of the bar resting on his shoulder was lower than the other end, that the weight of the door might have been as great as six hundred pounds; that same was dropped down towards appellee when the others released their hold, leaving him to sustain the full weight; that the door had not been thrown in the groove at the top, all of which the above evidence tends to prove, we can not say as a matter of law that the evidence did not warrant the jury in finding that appellee was injured in the manner claimed by him.

(2) *Second.* Appellant contends that the verdict was excessive. The appellee at the time of the injury was forty-two years of age, he was physically strong and almost constantly at work. After the injury he was unable to do any physical labor. He could not stoop over to pick up anything. If he wanted to get down on the floor he had to get down on his knees. He had to sit in a

straight chair, he could not sit in any other kind. He could not use crutches because he could not stand the swing. He had no strength in his back, his nerves were ruined. He was growing worse instead of better, and at the time he gave his testimony it had been nearly eight months since he was injured. He was twenty-five pounds lighter than he was before the injury. He was earning $2 to $2.25 a day at the time of his injury, and if he had been able to work at the time of the trial he would have been earning $4 a day for eight hours work. His bladder was injured. He was compelled to urinate much more frequently than before the injury and there was a burning sensation when he tried and could not urinate. Since being injured he had had the headache so much that it made him weak. Appellee gives in his testimony the above as some of the results from his injury. He discusses his treatment and his suffering from the time he was injured until the trial. He stated that the next morning after the injury he got up and started to make a fire in the stove and all at once his muscles seemed to relax, his wife got him to bed, the doctor of appellant came and put straps on his back and continued to treat him for about twenty days at his home. Appellee went to the doctor's office from August 21 to some time in October. Then he was sent to the hospital in Little Rock for treatment where the doctors treated him. He testified concerning what was done by the surgeons in examining and treating him, and stated that the treatment gave him so much pain that he could not speak; that the doctors had to put straps on his back with steel stays and laces which he was still wearing, and if he took them off he had no strength in his back and would not be able without them to walk across the room.

One of the physicians who was called by the appellee to testify stated that he obtained the history of the case and examined him for objective symptoms so as to come to a conclusion as to what he was suffering from. He found that appellee's pulse was 120, a normal pulse is 72. His abdominal and cremaster reflexes were absent. The

increased pulse indicated that he had a nervous irritation. He showed a tenderness over the lumbar regions. There was a breaking down of the nerve reflexes in the lumbar regions and some of the joints were ruptured. In view of his age, and that it had been eight months since he was hurt, and the condition that appellee was in at the trial, witness calculated that his injury was organic, and that all such injuries were slow in repairing. In witness' opinion his chances for recovery were very unfavorable.

Another physician who had examined appellee, after entering into detail in describing his condition, substantially corroborated the other physician. He stated that in his opinion the condition of appellee was due to the sudden weight being thrown upon him; that the injury strained the muscles of the lumbar regions and the back part of the pelvis which was manifested by the loss of weight and loss of sleep and indicated a serious disturbance of his nervous system; that the outlook was not good for his recovery.

Experts were introduced on behalf of appellant who testify, in substance, that they had examined the appellee soon after the alleged accident and found no injury of the shoulder and found no inflammation in the lumbar region; that there was a malformation in the vertebrae which in their opinion was congenital; that if the condition of the vertebrae had occurred at the time of the accident there would have been inflammation at the time they made their examination and the pain would have been instantaneous and so severe that appellee would have cried out and probably would have fallen in his tracks; that a man with "that sort of back would be expected to break down after years of hard labor which appellee states he had undergone. These experts also stated that appellee could have strained his back while lifting at the door with the pinch bar and have had all of the symptoms of which he complained.

It was an issue for the jury to determine under the above evidence whether or not appellee's physical condition and the pain and suffering incident thereto were

caused from the injury. The measure of appellee's damages for the physical injury and the pain and suffering incident thereto, if any, which he alleged he sustained through negligence of appellant, was, under the above testimony, likewise an issue of fact for the jury. We are required under a familiar rule to give the testimony its strongest probative value in favor of the verdict of the jury. When this is done it can not be said that the verdict was for an excessive amount.

Counsel for appellant state in their brief that the first instruction given by the court at the request of the appellee was erroneous because it allowed the jury to return damages as for a permanent injury to appellee, citing *St. Louis, I. M. & S. Ry. Co.* v. *Bird,* 106 Ark. 177.

Upon an examination of this instruction as set forth in appellant's abstract we discover there is nothing in it on the subject of permanent injury. Moreover, appellant did not make any specific request of the court to instruct the jury that there was no evidence to warrant a verdict for the plaintiff (appellee) based upon any permanent injury, as was the case in *Railroad Co.* v. *Bird, supra.*

There are no errors in the record and the judgment is therefore affirmed.