CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. COMER.

Opinion delivered March 5, 1923.

1. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—In determining whether the verdict in a personal injury case was excessive, the testimony must be viewed in the light most favorable to the plaintiffs.

2. CARRIERS—PERSONAL INJURY TO PASSENGER—EVIDENCE.—In an action for personal injury to a passenger, evidence *held* to sustain a verdict in favor of the passenger.

3. DAMAGES—EXCESSIVENESS.—In an action for personal injuries, in which plaintiff suffered an injury to her side resulting in a miscarriage, and was confined to her bed for seven days, and was rendered very nervous, a verdict for $2,000 was not excessive.

4. DAMAGES—RECOVERY BY INJURED PASSENGER'S HUSBAND.—Where, on account of an injury to a wife, she was unable to perform household duties for nine days, and the husband spent $60 for medical services and hired the family washing done for two weeks, but there was no permanent impairment of her ability to assist her husband after the injury, a verdict of $500 will be reduced to $100.

Appeal from Jackson Circuit Court; *Dene H. Coleman*, Judge; modified in part.

*T. S. Buzbee* and *H. T. Harrison*, for appellant.

A verdict in favor of Lois Comer of $2,000 where there was no proof of permanent injury, she having been confined to her bed for only seven days and within less than four weeks able to do arduous work, was grossly

excessive; likewise a verdict of $500 in favor of B. F. Comer, where the only damage suffered by him was the payment of doctors' bills of $10 to one doctor, and $50 to another, was manifestly excessive. 82 Ark. 61; 87 Ark. 109; 89 Ark. 9; 98 Ark. 425; 36 So. 676.

*Boyce & Mack,* for appellees.

As to Lois Comer, the verdict was not excessive. The single case of injury resulting in miscarriage cited by appellant as an excessive verdict, and in which a remittitur from $2,500 down to $1,000 was required, was an exception to the general rule. The courts generally sustain verdict in such cases, even for larger amounts than returned here. L. R. A. 1917-A, 394; 17 L. R. A. (N. S.) 598; 128 N. E. 513; 35 L. R. A. 252; 6 Thompson on Negligence, §§ 7348, 7352; 8 Am. & Eng. Enc. of Law, 2d ed., 629. The B. F. Comer verdict was not excessive. 6 Thompson on Negligence, § 7341; 13 R. C. L. 1411; *Id.* 1422; 7 L. R. A. (N. S.) 545.

Smith, J. B. F. Comer and Lois, his wife, instituted separate suits against the Chicago, Rock Island & Pacific Railway Company, to recover damages on account of alleged injuries to Lois Comer on August 7, 1921, while she was preparing to board one of the defendant's trains. The cases were consolidated by consent and tried together.

The complaint alleged that, as Mrs. Comer, with two small children, was boarding a passenger train, the company negligently caused the train to start, and she was suddenly and violently thrown and jerked against the end of the coach and against the railing of the platform to the entrance of the coach, and as a result thereof she suffered a nervous shock, was injured and bruised in her right side, her right arm and back were bruised, and by reason thereof she was caused to suffer a miscarriage on the 11th day of August, 1921.

Mr. Comer alleged that he had been caused to expend large sums of money on account of his wife's

injuries, and had been deprived of her services and society, and he prayed damages on that account.

There was a denial of liability and of injury; but the jury found for the plaintiff in each case, and assessed Mrs. Comer's damages at $2,000 and her husband's at $500, and judgments were rendered against the railroad company for those amounts.

The railroad company has appealed, and the only assignment of error argued for the reversal of the judgments is that they are excessive.

We must, of course, view the testimony in the light most favorable to the plaintiffs; otherwise the judgments would have to be reversed as being excessive, as the clear preponderance of the testimony is that Mrs. Comer was not seriously injured. On the day following the injury Dr. Bradford was called to attend Mrs. Comer on account of the injury to her wrist. She made no complaint of any other injury, and the doctor regarded the wound which he treated as of small consequence.

Mrs. Comer testified that she was injured in the manner alleged in her complaint; that she was pregnant at the time of her injury, and had been since June; that prior to her injury she had been in excellent health. That she was thrown violently against the railing of the platform, and bounced back, and was injured between her ribs and side. That soon after her injury her arm felt numb, and her side became sore. She was injured on Monday, and the pain continued and increased, and she went to bed on Wednesday, and suffered a miscarriage the next day. She saw a doctor on Monday and Tuesday, and he treated her arm, but gave her no treatment for her side. Wednesday night the pains in her side became more severe, and she was very nervous, and the doctor was called, and she was given relief. Later she again became very nervous, and suffered a miscarriage, and was thereafter in bed for seven days, and did not resume her household duties until the ninth day.

Mrs. Pierce, Mrs. Baker and Mrs. Comer, a sister-in-law of the plaintiff, gave testimony affording sub-

stantial corroboration of the plaintiff's testimony in regard to her illness and its consequences.

A doctor who attended plaintiff described her nervous condition, and stated that the patient told him, as a part of the history of her case, that she had suffered a miscarriage, and she pointed out a sheet on the bed with blood spots on it. The sheet was folded, and he did not know to what extent it was saturated with blood. He "could not say there was anything about her condition to indicate she had suffered a miscarriage"; that while he would not say definitely that she had miscarried, it is clear that in his opinion the case was one of delayed menstruation.

Doctor Bradford, who made a digital examination of Mrs. Comer on August 27th, testified that the appearance he then found indicated that there had been no miscarriage.

Still another doctor, who also examined the plaintiff on October 6th, testified that, if there was a miscarriage, it was caused by the plaintiff's injury and fright. He testified that at the time of his examination he found a retroversion of the womb, with a slight enlargement and a tendency for a slight prolapse, and that her temperature and reflexes were exaggerated. He also testified that her nervousness had improved, and she had about recovered from her injury and the miscarriage.

We think the testimony legally sufficient to support a finding that Mrs. Comer had suffered a miscarriage, and she testified that she suffered acutely during the nine days she was confined in bed, and had suffered less severely for some time thereafter. Under these circumstances we do not feel disposed to say that the evidence does not support the judgment recovered by her.

The verdict in Mr. Comer's favor we think is clearly excessive. He expended $60 for medical services. Mrs. Comer was unable to perform her household duties for a period of only nine days. When she was able, she

did the family washing, but during her illness her husband hired this done for two weeks. She testified that she had also worked with her husband in the field, but since her injury she had done less of this work. We think, however, the testimony does not show any impairment of Mrs. Comer's capacity to assist her husband as she did before her injury, and we have concluded that a judgment for a hundred dollars would fully compensate any damage sustained by him on account of his wife's injury, and the judgment in his favor will be reduced to that amount. The judgment in Mrs. Comer's favor will be affirmed.