JAMISON v. HENDERSON (1).

3408

AND

ARKANSAS BAPTIST COLLEGE v. ARKANSAS MISSIONARY BAPTIST CONVENTION (2).

3459

*Booker & Booker* and *Charles B. Thweatt,* for appellants in No. 3408, and for appellees in No. 3459.

*John A. Hibbler* and *R. W. Wilson,* for appellees in No. 3408, and for appellants in No. 3459.

JOHNSON, C. J. These consolidated cases arose under the following circumstances:

On June 5, 1933, J. H. Henderson *et al.,* purporting to represent the Arkansas Baptist College, filed in the Pulaski Circuit Court their petition, alleging facts from which a benevolent association might be inferred, and praying that such be declared by the court, under authority of §§ 1788 to 1795, inclusive, of Crawford & Moses' Digest. On the same date the petition was presented to the court, and the prayer thereof was granted declaring said incorporation for benevolent purposes as follows:

"It is therefore considered, ordered and adjudged by the court that the petitioners be, and they are hereby, created a body politic and corporate, under the name and style of 'Arkansas Baptist College,' with all the powers, privileges and immunities, and subject to all the liabilities and exemptions granted in the law thereunto appertaining."

Thereafter, on June 13, 1933, J. R. Jamison *et al.* in their own behalf, and as purported trustees for the Arkansas Baptist College for the Arkansas Missionary

Baptist Convention, filed their petition of intervention in said cause, in which it was alleged that the Arkansas Baptist College is a corporation organized under the laws of this State in 1887, and that the Arkansas Missionary Baptist Convention was and is the parent body thereof; that the order and judgment made and entered in said cause was erroneous and void, because the name assumed by the incorporators is in conflict with the statutes of Arkansas, and that the Arkansas Baptist College had not been previously dissolved as a corporation. To the intervention thus filed, petitioners responded, denying the allegations of the petition of intervention and alleging affirmatively that, at a meeting of the Arkansas Missionary Baptist Convention held at Helena, Arkansas, in November, 1931, a resolution was duly presented and passed by said convention which had the effect of dissolving and surrendering the charter of said Arkansas Baptist College and transferring all its properties to petitioners as trustees. It was further alleged in petitioners' response that, prior to December, 1931, there had existed two branches of the Arkansas Baptist Convention, namely, Arkansas State Missionary Baptist Convention and the Arkansas Missionary Baptist Convention Progressive; that on December 9, 1931, the two branches, in conformity to proper resolutions theretofore passed, met in joint session and then and there, by proper resolutions, effected a permanent merger and consolidation of said conventions, thereafter to be known and designated as the Consolidated Missionary Baptist Convention of Arkansas; that said joint meeting, then assembled, adopted a constitution and bylaws for its government and elected permanent officers, who thereafter assumed their duties as such and have since managed and controlled the business and affairs of the Negro Baptist in Arkansas; that interveners are without right or authority in the premises, and that they and each of them should be restrained and enjoined from intermeddling in the affairs of the consolidated convention.

Upon the issues thus joined, a trial was had in the Pulaski Circuit Court on June 20, 1933, which resulted in a judgment dismissing interveners' petition as follows:

"The court finds that the petition for incorporation filed in this case on June 5, 1933, was duly authorized by resolutions of the Arkansas Missionary Baptist Convention and the Arkansas Missionary Baptist Convention Progressive; and the court further finds that neither the Arkansas Missionary Baptist Convention nor the Arkansas Missionary Baptist Convention Progressive was a party to this case."

The appeal in case number 3408 brings into question the validity of these circuit court judgments, but the evidence adduced upon trial in the circuit court has not been brought before us by bill of exceptions or otherwise.

On June 22, 1933, the Arkansas Missionary Baptist Convention, through its purported trustees, J. R. Jamison *et al.* filed its complaint in the Pulaski Chancery Court, which is case number 3459 in this court, in which a permanent injunction was prayed against the agents, officers and trustees of the Arkansas Baptist College restraining and enjoining them from interfering with the possession and control of all properties then and theretofore held or controlled by the Arkansas Missionary Baptist Convention.

The Arkansas Baptist College, as incorporated by the circuit court judgment of June 5, 1933, answered this complaint for injunction by alleging its incorporation and affirmatively pleaded that the proceedings had and done in the Pulaski Circuit Court were *res judicatae*. A demurrer was interposed to the answer thus alleging *res judicatae,* which was sustained by the chancery court, upon the theory that the circuit court judgment declaring the merger and consolidation of the Arkansas Missionary Baptist Convention and the Arkansas Missionary Baptist Convention Progressive was void. Defendants declining to further plead, a permanent injunction was granted in behalf of petitioners, and against the trustees of the Arkansas Baptist College, and this appeal is therefrom.

From the foregoing recitals, it definitely appears that the Pulaski Circuit Court acquired jurisdiction of the subject-matter and parties in the litigation presented in

case number 3408, and its judgment in the premises is conclusive and binding upon all parties thereto. Sections 1788 to 1795, inclusive, Crawford & Moses' Digest, vests in the circuit courts of this State exclusive jurisdiction in the determination whether an association of individuals should be incorporated, and necessarily draws into question all necessary legal prerequisites thereto. Moreover, jurisdiction was conceded and invoked by the trustees of the Arkansas Missionary Baptist Convention when they voluntarily appeared therein and affirmatively requested and procured a temporary injunction pending the litigation. *Organ* v. *Memphis & L. R. Rd. Co.,* 51 Ark. 235, 11 S. W. 96; *Morton* v. *Miller,* 25 Ark. 108. The contention is, however, that the circuit court judgment declaring the incorporation and the merger of the old conventions is void, which appears upon the face of the judgment. It is argued that a merger of two or more corporations is not authorized by statute in this State, and for this reason the circuit court judgment so declaring appears to be void upon its face. All necessary intendments should be invoked in aid of the jurisdiction of this circuit court judgment. Certainly, it must be conceded that any corporation organized or existing under the laws of this State may surrender its corporate charter and existence and cease to do business as such by proper resolutions of its stockholders, officers and agents. Such procedure is expressly authorized by § 1823, Crawford & Moses' Digest. When such procedure is invoked and accomplished, no creditors being involved, the property of such corporation reverts to the stockholders. The circuit court was warranted in finding that the legal effect of the resolutions adopted by the various conventions was to dissolve the corporate existence of the respective conventions and corporations and thereby vesting their respective properties in the parent bodies. 7 R. C. L. Cor., § 745. In the absence of a bill of exceptions, we must conclusively presume that legal evidence was heard which warrants the judgment entered.

Since the circuit court was warranted in finding that the corporations had dissolved by consent of their stock-

holders and that the property had reverted to the parent bodies, it was fully justified in holding that a merger and consolidation could be effected by the owners. This procedure was expressly recognized by us in the case of *Sanders* v. *Baggerly,* 96 Ark. 117, 131 S. W. 49, wherein we stated the rule as follows ▮: "In Christian thought, unity is more desirable than division. All denominational church organizations have as their primary object the propagation of the Christian religion. The individual advancement of each separate organization is looked upon as a contribution that far to the general cause. A union with another church organization having the same purpose may be regarded therefore as a step forward in the consummation of the work in which all are engaged. For this reason the general analogy of any secular corporation or association is misleading. The purpose of such an organization is self-aggrandizement, the advancement of its own interests, its increase in power, in wealth, in strength, without regard to any other organization, to the prosperity or purposes of any other association of individuals. Such organizations have no common purpose, no common head, no invisible cords of union. Each stands alone. Each has property devoted to the special individual purposes of the society, and each has stockholders. A business corporation is organized for profit; and if its life is not limited by its charter, it is regarded as perpetual unless sooner ended for breach of law or duty, or inability to discharge its functions. In case of a termination of corporate rights by efflux of time, or for either of the causes last mentioned, the business is wound up, the property is sold, and the proceeds, after payment of debts, if any, divided among the stockholders. But with church organizations it is different. They are not created for either profit or pleasure, but to do good. They have property, but no stockholders. The possession of all churches are [is] devoted to the same broad, general purpose, likewise the efforts of all of their members acting within the organizations. * * *

"There must be in every church organization an implied or inherent power of union with other church organizations, growing out of the purpose for which all are constituted, *viz.*, the dissemination of the Christian religion. If any two organizations reach the conclusion that they can better subserve this great and fundamental purpose by uniting with each other, and if they can agree, within their constitutional limits, upon the points of difference previously dividing them, there can be no reason, in law, why they should remain apart. There is no soundness in the view that church divisions, once made, must ever continue. If divisions in the Christian church were intended to be perpetual, then the argument for the defendants, on this head, is unanswerable; if there be such a thing as a universal church of which all the divisions are members or branches, if there be a tendency to unity in Christendom, and if this tendency is in accord with the spirit and purpose of Christianity—then the argument referred to can avail but little. * * *

"The power exists by implication. It exists from the very nature of the case, not only in the Cumberland organization, but in every other Christian society in whose standards there is not an explicit pronouncement to the contrary, because they are all parts of one whole, all engaged in the same work, seeking the same end, and animated by a common purpose."

It definitely appears from the rule just stated that we are committed to the doctrine that ecclesiastical associations and conventions may merge and consolidate without statutory sanction or authority, as the power so to do exists by implication in the very nature of the subject.

It follows from what we have said that the circuit court judgment of June 5, 1933, and as amended subsequent thereto does not appear to be void upon its face, but on the contrary is a valid and binding judgment and order upon all parties thereto and must be affirmed.

In case number 3459, which is an appeal from the Pulaski Chancery Court, it appears that the chancellor was of the opinion that the circuit court judgment heretofore discussed appeared to be void upon its face, therefore

a demurrer was sustained to appellants' answer therein pleading said circuit court judgment as *res judicata*. It suffices to say that the chancery court erred in sustaining said demurrer. The plea of *res judicata* was well pleaded, and was and is a complete bar and defense to the complaint in said cause. It is the well-settled doctrine in this jurisdiction that a judgment of a court of competent jurisdiction is conclusive of all questions within the issue, whether formally litigated or not. It extends, not only to questions of fact and law which were decided in the former suit, but also to the grounds of recovery or defense, which might have been, but were not, presented. *Howard-Sevier Road Imp. Dist. 1* v. *Hunt,* 166 Ark. 62, 265 S. W. 517; *Road Imp. Dist. No. 4* v. *Burkett,* 167 Ark. 176, 266 S. W. 930; *Coleman* v. *Mitchell,* 172 Ark. 619, 290 S. W. 64; *Prewett* v. *Water Works Imp. Dist. No. 1,* 176 Ark. 1166, 5 S. W. (2d) 735; *Akins* v. *Heiden,* 177 Ark. 392, 7 S. W. (2d) 15.

For the reason stated, cause number 3459, is reversed, and remanded with directions to overrule appellees' demurrer to appellants' answer, and to enter a decree sustaining appellants' plea of *res judicata*.