MISSOURI PACIFIC RAILROAD COMPANY v. HARRIS.

4-5538                                    129 S. W. 2d 944

Opinion delivered June 19, 1939.

*T. B. Pryor* and *Daggett & Daggett,* for appellant.
*A. M. Coates,* for appellee.

BAKER, J.   In September last, the appellee filed his
suit in the Phillips circuit court alleging that he was
moving corn, household goods, and some farming tools,
from his former home in Desha county, to a point not far
distant from Elaine, in Phillips county.   At a point where
the paved highway crossed the railroad he alleges that
the crossing was not kept up and the wheels of his wagon
became blocked behind the rails, and though he worked
for several minutes he was unable to move the wagon
and it was struck by a train moving in a northerly di-
rection.   The wagon was wrecked, other property dam-
aged, and some corn lost.   He sued for $151.50 and re-
covered judgment for $149.50.   Appellant does not com-
plain that the judgment was excessive, or that the court
committed any error in the instructions given, except
that he insists that there was no substantial evidence to
support the finding of the jury on the question of lia-
bility.   This question of liability has been narrowed to
the single proposition of the proper maintenance of the
crossing by the appellant.   The parties themselves, in
the submission of the case, eliminated the questions of
proper lookout or discovered peril.   The court properly
instructed the jury that it was the duty of appellant to
exercise ordinary care to keep the crossing in such con-
dition as to be reasonably safe for ordinary and conven-
ient use of the traveling public.   The appellant argues
that the evidence was not sufficient to make a jury ques-

tion upon this proposition and that the court should have directed a verdict for appellants on account of the insufficiency of the evidence to support the verdict. It becomes necessary, on account of this contention, to state some of the evidence and in making the statement to sustain this judgment we are not unmindful of the decisions in this state that such statements shall be most favorably set forth to sustain the verdict.

The appellee was a negro farmer who lived in Desha county. He was moving his personal property to a point not far from Elaine in Phillips county, where he was expecting to make a crop during the year 1938. He left home on Sunday and presumably he must have camped somewhere on the highway Sunday night. He states that on Monday morning, January 10th, about 3:30, he started from where he had spent the night and about 5 a. m. reached the crossing of the highway over the railroad tracks. He says that his wagon was loaded with about 50 bushels of corn, some household goods, some farm implements, and that a cultivator was hitched on behind. When he drove upon the railroad tracks, he says the wheels of his wagon were blocked. Part of his testimony would indicate that his front wheels were blocked by reason of getting caught between the rails of the railroad track. Later, upon cross-examination, his testimony indicates that pavement of the highway came within about 18 or 20 inches of the railroad track and that the rear wheels were caught in this space between the pavement and the rail. Harris goes into detail and explains how he attempted to extricate his wagon from this position. He first attempted to roll the wheels with his hands as he tried to drive his mules and make them pull the wagon out. Failing in this, he then hitched his team to the end of the wagon tongue in an effort to see-saw or jerk the wagon over the rail. Unsuccessful in this effort, he took a chain and hitched his mules to the rear of the wagon and attempted to pull it back and was unable to release it in that way. According to his statement, he looked down the railroad track and saw the headlight of a train coming. He attempted to signal

the train by waving a board. He states that he was answered by the engineer's signal of sounding the whistle. However, the train continued on its way until the wagon was wrecked and the corn scattered and some of the household goods damaged. The details of the damages are unnecessary to state here. Harris states that after the wrecking of this wagon the employees upon the train backed the train up and made an observation of the crossing at the place where the wagon had been struck. He testifies to certain statements made by these employees to the effect that his wagon had been blocked, and other statements which he says were made are unnecessary to repeat here. Such statements tended only to show these employees obtained certain information concerning which they did not testify. Harris is contradicted only by the section foreman, who testified in terms equally positive to statements made by Harris, that this crossing was made up of chat and that he had stopped only the evening before and made some slight repairs; that Harris' statement that the wheels dropped into holes could not have been true because he had filled the slight holes or depressions only the day before. When his attention was called to the fact that the day before was Sunday, he changed his statement, saying that he did the work only a little while before the time of the accident, and, finally, by suggestion, he said it was Saturday afternoon, about 3:30 o'clock. This section foreman also testified that the chat did not beat out or wash out. There was offered in evidence pictures showing how the chat had been used in building up the crossings. These pictures were made about thirty days after the accident, but were offered without objection, and it may be said that chat so used, as shown by these pictures, shows a crossing perhaps as nearly perfect as may be made. The section foreman, speculating upon the manner of the accident, says that the holes or hole was caused by the wheels of the wagon pushing or scooping out the chat in that place; that the wheels of the wagon had rolled off the chat at the crossing because the driver had gone too far to the right. This statement made by the section foreman was informa-

tion he alleged was gained from Harris himself. We think it may be said to be certain that if the crossing was in the condition on the morning of January 10th that is shown in the pictures made thirty days thereafter and offered in evidence as tending to show the condition of the crossing at that time, there was no liability. This condition, as repaired, disclosed no negligence in the maintenance of the crossing at that time, and it may be said that it would have been impossible for the wheels to have dropped in any hole or holes on the crossing and to have been blocked, either between the rails or on either side of them. The exact conditions that prevailed at the time of the accident are by no means so certain. There is no evidence that the chat washed out. The evidence is undisputed that this wagon was blocked by the rails. If we may judge from the picture offered, such blocking could not have occurred except upon a defective crossing, one wherein the chat was beaten out or left lower than the rails, at least the jury might have well reached this conclusion. The question of a proper or improper maintenance was one submitted to the jury under proper instructions. One of these was asked by appellants in regard to the duty and obligation of the appellant to exercise ordinary care to maintain the crossing. Perhaps our last announcement upon the law is *Missouri Pacific Rd. Co.* v. *Wright,* 197 Ark. 933, 126 S. W. 2d 609.

Appellants insist that this statement of the appellee is not sufficient to show liability, "I started across the railroad there. There were some holes there and the front wheels fell in there and blocked the wagon between the two rails." This evidence, taken with the other statements made by appellee, showing his efforts to extricate the wagon from this blocked condition, certainly raises a question to be determined by the jury as to whether the appellants exercised ordinary care in the maintenance of this crossing. It was a question of fact, not a question of law. The jury determined the facts contrary to appellant's contention.

Affirmed.