TEMPLE COTTON OIL COMPANY *v.* BROWN.

4-5570
132 S. W. 2d 791

Opinion delivered October 23, 1939.

*Steve Carrigan,* for appellant.

*J. H. Lookadoo,* for appellee.

McHANEY, J. Appellee brought this action in December, 1938, against appellant in the Clark circuit court to recover damages for personal injuries which he alleges he sustained in October, 1937, the exact date on which he was injured not being stated, while employed as ginner by appellant in its cotton gin at Fulton in Hempstead county.

Sometime in October, 1937, a drive shaft on the engine broke, necessitating a shut down of the gin. It became necessary to remove this drive shaft, to which was attached a large pulley, and send it to a machine shop in Hope, Arkansas, to be repaired. When a breakdown occurred all the employees were used to assist in making repairs. When the drive shaft broke as above stated, appellee and the other employees were used in taking it down and in loading it in a truck for shipment to Hope. It was repaired and brought back from Hope by the machine shop there on the late afternoon or evening of the next day, and appellee and others assisted in unloading and installing the drive shaft and pulley in place. It was about 8 o'clock at night when they unloaded and carried or rolled it around the engine to lift it up and put it in place. His amended complaint states: "That as the plaintiff and these other employees of the defendant started carrying this heavy pulley around the end of the large engine, which was the only way possible for them to take it to the place where it belonged, to be installed and just as they were going around the end of the large engine the plaintiff stepped on some oil and slipped and injured himself; that it was dark in this engine room where the plaintiff was walking, carrying part of this heavy load referred to above, for the reason that there was only one light in the room, and it was on the other side of the engine and the shadow of the engine and drive wheel made it dark so that the plaintiff could not

see what he was stepping on or into; that he stepped on some oil that had carelessly and negligently been left on the floor by the defendant, and that this oil had been there for several hours, and plaintiff's stepping on this oil and slipping caused him to be injured as alleged in his complaint, and also as will be set out further on in this amendment to plaintiff's complaint.''

The leaving of the oil on the engine room floor is the negligence relied on for a recovery in this action. As a result of his stepping in the oil and slipping, he alleged that he suffered many injuries, which he sets out in detail, and which resulted in his being totally and permanently disabled, to his damage in the sum of $50,000. The answer was a general denial of all allegations, a specific denial that he was injured or that he suffered any damages therefrom, and a plea of assumption of risk and contributory negligence.

Trial resulted in a verdict and judgment against appellant for $10,000, hence this appeal.

We think the court erred in refusing to direct a verdict for appellant at its request for any one of two or three reasons: (1) That no actionable negligence is shown; and (2) that if so, appellee assumed the risk as a matter of law; and (3) that he suffered no substantial injury.

1-2. Let it be assumed that there was some oil on the floor of the engine room of the cotton gin, and that the foreman had given general instructions to keep the floor clear of oil. It is not unusual, indeed it may be said to be the usual thing to find more or less oil or grease on the floor of the engine rooms of all cotton gins. The engine operated by appellant was a well-known make of open crank case engines, and such engines do throw out some oil. But this fact must have been well known to appellee, as he was frequently in and about the engine room, had worked at this gin one or two seasons before the 1937 season, and assisted in removing the drive shaft the day before. So, it is difficult to see that appellant was negligent, because its employee in the engine room

had not mopped up the oil which appellee says he stepped in, even in violation of instructions so to do. But, assuming that this was negligence, or that the jury was justified in so finding, we think appellee must be held to have assumed the risk of injury caused by slipping in the oil. If it was there, it must have been there the day before, because the engine had not been operated since the breakdown. Appellee assisted in removing the drive shaft the day before in broad open daylight. He assisted in putting it back in place about eight or nine o'clock at night, but the undisputed proof shows that the engine room was electrically lighted—whether one or two lights is in dispute. If oil was on the floor, it was perfectly open and obvious. He says himself that he did not look, but if he had he could have seen it, if it was there, and he must have seen it the day before, if he had looked. The drive shaft was brought back by him and the others over the same route through the engine room over which it was removed the day before. It was testified to by the machinist, and not denied by anyone, that he brought a double light socket and an extension cord back with him, and that he plugged in the extension line in the double socket to give an extra light on the side the men were working on, which made three lights.

Under this state of facts we think this case is ruled adversely to appellee by such cases as *Missouri Pac. Rd. Co. v. Lane,* 186 Ark. 807, 56 S. W. 2d 175; *St. Louis-S. F. Ry. Co. v. Burns,* 186 Ark. 921, 56 S. W. 2d 1027; *Missouri Pac. Rd. Co. v. Martin,* 186 Ark. 1101, 57 S. W. 2d 1047; *St. Louis-S. F. Ry. Co. v. Ward,* 197 Ark. 520, 124 S. W. 2d 975; and *Missouri Pac. Rd. Co. v. Vinson,* 196 Ark. 500, 118 S. W. 2d 672. It is not shown just how much oil was on the floor, whether much or little, but whatever it was it was open and obvious. In *Missouri Pac. Rd. Co. v. Lane, supra,* we quoted from *Mississippi Power Co. v. Hubbard,* 181 Ark. 487, 26 S. W. 2d 118, and, after stating the rule that employees do not assume risks created by the negligent act of the master, and that he has the right to require the master to provide a safe place to work, the opinion in that case said [186 Ark. 807, 56 S.

W. 2d 1027]: "But it is equally true that, where the danger arising from the negligent conduct of the master is so apparent and obvious in its nature as to be at once discoverable to one of ordinary intelligence, an employee, by voluntarily undertaking to perform his work in such a situation, assumes the hazards which exempts the employer from liability on account of injury to the employee. *Wisconsin & Arkansas Lumber Co.* v. *McCloud,* 168 Ark. 352, 270 S. W. 599; *Chicago, R. I. & P. Ry. Co.* v. *Allison,* 171 Ark. 983, 287 S. W. 197; *Ward Furniture Mfg. Co.* v. *Weigand,* 173 Ark. 762, 293 S. W. 1002. Other recent cases on the subject are *Howell* v. *Harvill,* 185 Ark. 977, 50 S. W. 2d 597, and *Koss Construction Co.* v. *Vanderberg,* 185 Ark. 316, 47 S. W. 2d 41.

"No one knew how the oil happened to be on the top of the tank, whether it had sloshed out of the tank car through the dome, or whether it had been spilt there by the oil company, from whom it was purchased, in loading it, but this can make no difference. The undisputed proof shows that it was quite the usual thing for oil to be on top of such cars, to the knowledge of appellee, and he could not blindly step therein under the circumstances of this case without assuming the risk of so doing."

So, here, appellee must be held to have assumed the risk of the oil being on the floor, even assuming that appellant was negligent in so leaving it.

(3) Appellee has recovered a large judgment, $10,-000, and it is difficult to understand how the jury could have so found under the evidence, or how the trial court permitted it to stand.

After his alleged injury, he continued to work during the remainder of that ginning season, or until about Christmas without losing a day on account of any injury. He made no claim for an injury. He did not consult a physician. After the ginning season was over, he did other work, performed his duties as a peace officer in Fulton, and when the ginning season opened in the fall of 1938, he again worked for appellee as cotton baler until he received two other injuries on the same day, which hurt his back "over again." Regarding the first

accident in 1938, he said: "There was a big bale of cotton in the press and I started to unbuckle it, and when there is a big bale in the press, it kicks, and when it kicked it gave me a twist and hurt my back over again." As to the second injury on the same day he said, in explaining how it happened: "I was lifting a bale of cotton and stepped in a crack." He makes no claim for these two injuries. It would appear to the ordinary person that, if he received the injuries to his back of which he complains, such as to render him totally and permanently disabled, he would have known about it at once and would not have been able to continue to do the work he did do thereafter and until his third injury in 1938. The necessary inference is that he was not so disabled.

For the error in refusing to direct a verdict for appellant, the judgment will be reversed, and, as the case appears to have been fully developed, it will be dismissed."

HUMPHREYS, MEHAFFY and BAKER, JJ., dissent.

MEHAFFY, J., (dissenting). The opinion of the majority states. "We think the court erred in refusing to direct a verdict for appellant at its request for any one of two or three reasons: (1) That no actionable negligence is shown; and (2) that if so, appellee assumed the risk as a matter of law; and (3) that he suffered no substantial injury."

I cannot agree with the majority on any one of these propositions, and I shall endeavor to give my reasons for disagreeing.

It is first stated that there is no actionable negligence shown, and if this were true, the decision of the court would be correct. But we have many times held that in determining the sufficiency of evidence to support a verdict, the Supreme Court must view the evidence with all reasonable inferences arising therefrom in the light most favorable to the appellee, and when thus viewed, if there is any substantial evidence to support the verdict, it cannot be disturbed by this court. A few of the cases so holding are the following: *Producers Gravel*

& Sand Co. v. Jones, 197 Ark. 767, 126 S. W. 2d 99; South-western Trans. Co. v. Chambliss, 197 Ark. 865, 125 S. W. 2d 123; Ry. Express Agency v. Gee, 197 Ark. 925, 125 S. W. 2d 802; St. Louis-S. F. Ry. Co. v. Herndon, ante, p. 465, 129 S. W. 2d 954; Loyd v. James, ante, p. 255, 128 S. W. 2d 1019; St. L., S. W. Ry. Co. v. Braswell, ante, p. 143, 127 S. W. 2d 637; Kansas City So. Ry. Co. v. Holder, ante, p. 127, 127 S. W. 2d 807; Hot Springs Ry. Co. v. Hill, ante, p. 319, 128 S. W. 2d 369; Mo. Pac. Rd. Co. v. Harris, ante, p. 619, 129 S. W. 2d 944; Mo. Pac. Rd. Co. v. Davis, 197 Ark. 830, 125 S. W. 2d 785; Houston v. Hanby, 149 Ark. 486, 232 S. W. 930; Inter. Harvester Co. v. Layton, 148 Ark. 156, 229 S. W. 22; N. Y. Hotel Co. v. Palmer, 158 Ark. 598, 251 S. W. 34; Pritchett v. Rd. Imp. Dist. No. 2, 155 Ark. 514, 245 S. W. 313; Chi. R. I. & P. Ry. Co. v. Comer, 157 Ark. 409, 248 S. W. 268; Roach v. Scott, 157 Ark. 152, 247 S. W. 1037; Black v. Handley, 158 Ark. 640, 240 S. W. 411; Amer. Ry. Exp. Co. v. Mack-ley, 148 Ark. 227, 230 S. W. 598; K. C. S. Ry. Co. v. Sparks, 144 Ark. 227, 222 S. W. 724; Hines v. Rice, 142 Ark. 159, 218 S. W. 851; K. C. S. Ry. Co. v. Akin, 138 Ark. 10, 210 S. W. 350; Bennett v. Snyder, 147 Ark. 206, 227 S. W. 402; McCarty v. Nelson, 129 Ark. 280, 195 S. W. 689; Dickinson v. Brummett, 133 Ark. 30, 201 S. W. 812; Ft. Smith Light & Traction Co. v. Phillips, 136 Ark. 310, 206 S. W. 453; Tri-State Transit Co. v. Miller, 188 Ark. 149, 65 S. W. 2d 9, 90 A. L. R. 1389; Mo. Pac. Rd. Co. v. Harding, 188 Ark. 221, 65 S. W. 2d 20; Jamison v. Henderson, 189 Ark. 204, 71 S. W. 2d 696; Roach v. Haynes, 189 Ark. 399, 77 S. W. 2d 532; S. W. Gas & Electric Co. v. May, 190 Ark. 279, 78 S. W. 2d 387; Shrigley v. Pierson, 191 Ark. 224, 85 S. W. 2d 727; Doss v. Gephart, 191 Ark. 863, 88 S. W. 2d 62.

There are many other cases to the same effect, and we know of none to the contrary. One reason for this rule is that the trial judge and jurors see the witnesses, hear them testify, have an opportunity to observe their conduct and manner on the witness stand, and have much better opportunity to determine what the truth is than the Supreme Court can possibly have, when it simply

takes the printed record; it knows nothing about the witnesses or their manner of testifying. It does not see the appellee, the injured party, and, of course, is not able to judge the extent of the injury, pain and suffering, and its effort to do so would be mere speculation.

On this first proposition then, the question is: Was there any substantial evidence to support the verdict: The majority opinion says that it is not unusual, and, indeed it may be said to be the usual thing, to find more or less oil or grease on the floor of the engine rooms of all cotton gins. The statement of the court that such engines as this one do throw out some oil, I think is mere speculation and is not supported by the evidence.

E. B. Yarbrough testified that in the fall of 1937 and 1938 he had charge of the engine room during the day time, and that Mr. Arch Seamore had charge of it at night, and this witness also testified that there was some oil on the floor, and that it was caused by some defective condition of the engine. This court says that it is usual to have oil on the floor, but the undisputed evidence shows that the oil on the floor was caused by a defective engine. This witness also said that the engine had always "slung" oil. He testified that the appellee slipped in the oil while he and a negro were lifting the pulley. The floor in the engine room was concrete. The appellee's work was upstairs. After this happened they let him run the gin stands, which was a lighter job. This witness testified that it was impossible to have an engine of this type without it throwing some oil, but the engine in this case was defective, and this witness said that was what caused it to throw oil. He testified that Jack Brown, the appellee, worked upstairs, and that the only time the employees of the Temple Cotton Oil Company that did not work in the engine room would have occasion to go in there was, when they were repairing machinery.

There was not only a defective engine, and oil on the floor, as shown by the evidence, but it was dark. While the majority opinion says that appellant got a machinist there to fix the lights, and that he came with additional

fixtures, yet the undisputed evidence in this case shows that the injury occurred about the 8th or 9th of October, and this machinist testifies that he fixed the lights in November.

The apppellee testified that he was working for the Temple Cotton Oil Company, drawing three dollars a day, at the time of his injury. Previous to that time he had worked for the Missouri Pacific Railroad Company. His work was that of a ginner, for the Temple Cotton Oil Company. He did not work in the engine room, but worked upstairs in the linter room; that he stepped in the oil and slipped when he went down to help with the machinery; that he did not know the oil was there; that it was the duty of the employees of the appellant company to keep the engine room cleaned up; he did not know there was any oil on the floor of the engine room; he had never seen any oil on the floor there; that he never went down in the engine room unless something broke down; the light was on the right-hand side of the engine at the head of the engine; one reason the light was not shining on the oil was that the fly wheel was between it and the light; the other reason is the bed of the bearings; there was a shadow from the light down where the oil was; when he slipped in the oil, and hurt his back he went to the office and laid down. He further testified that he did not know the engine threw out oil and does not know whether he could have seen it, if he had looked.

This evidence as to the light, is really not disputed. It, therefore, appears that the evidence, without contradiction, showed that the engine was defective; that it threw oil and the oil was on the floor; that the appellee worked upstairs and knew nothing of the oil, and did not know that the engine threw oil; had never seen oil on the floor; that there was but one light there, and that the wheel was between that and the oil. If this evidence is viewed as this court has time and again held that it must be, in the light most favorable to the appellee, can it be said there was no evidence of negligence: I do not think so.

There was substantial evidence to submit to the jury the question of whether appellant was guilty of negligence causing the injury; and that being true, this court cannot hold that it was not guilty of negligenie as a matter of law.

Under the established rules of this court when the evidence introduced by appellee, viewed in the light most favorable to appellee, is sufficient to submit the case to the jury, the jury's verdict will not be disturbed by this court although other evidence is in conflict with that of appellee, and although this court may believe that the preponderance of the evidence is against the verdict.

The majority opinion further says that it is difficult to see that appellant was negligent; but assuming that it was negligent, or that the jury was justified in so finding, they think the appellee must be held to have assumed the risk of injury caused by slipping in the oil.

"Although the defense of assumption of risk is established as a part of the law and will be applied in all cases fairly within the rule, it is, nevertheless, not a favored doctrine, but at best is artificial and harsh and should not be extended beyond its reasonable limits." 39 C. J. 689.

This statement of the law was quoted with approval in the case of *Burden* v. *Hughes,* 186 Ark. 707, 55 S. W. 2d 502, and the court in that case said: "It is the duty of the master to make inspection for all latent or concealed defects beyond the knowledge of the employee. It is the duty of the master to make proper tests and inspections to discover dangers; and the employee has a right to assume that this duty has been performed by the master, and whether in any particular case the employer has discharged his duty with respect to making proper test and inspections is ordinarily a question for the jury."

In the case of *Mary Rocco* v. *Lehigh Valley Rd. Co.,* 288 U. S. 275, 53 S. Ct. 343, 77 L. Ed., 743, the Supreme Court of the United States, discussing the question of assumed risk and the authorities relied on by the railroad company, stated: "Under the authorities cited the

decedent assumed the risks ordinarily incident to his employment as a track inspector, but in the circumstances shown we do not think they included a failure on the part of the motorman to keep a lookout and to give warning in places where the view of one who might be expected to be on the track or approaching in the opposite direction was shut off and the probability of accident was therefore much greater than where the track is straight and the view unobstructed. The issues of negligence of the motorman and contributory negligence of the decedent were for the jury.''

"The doctrine of assumption of risk, whether assumed to be founded in the fiction of an implied contract with pay commensurate with the danger, or whether it be referred to the maxim, '*Volenti non fit injuria*' (3 Labatt's Master & Servant, 2d ed., § 1285), is artifical and harsh at best. It should not be extended beyond its reasonable limits. It must be remembered that the plan of the establishment and the co-ordination of work is that of the master deliberately adopted without consulting the servant. In adopting the plan the master must be assumed to have considered it with a maturity and deliberation not possible to the servant absorbed in the details of his daily duties. Whenever, therefore, there is room for reasonable difference of opinion as to whether the servant so appreciated the danger as to make it reckless to proceed, the question is one for the jury, especially where the servant is proceeding under an order of any kind, however communicated.'' *Hull* v. *Davenport*, 93 Wash. 16, 159 Pac. 1072.

This court said, in the case of *St. L. I. Mt. & So. Ry. Co.* v. *Rogers*, 93 Ark. 564, 126 S. W. 375, in discussing assumed risk: ''The servant is not presumed to know of risks and dangers caused by the negligence of the master, after he enters the service, which change the conditions of the service. If he is injured by such negligence, he cannot be said to have assumed the risk, in the absence of knowledge on his part that there was such a danger.''

The evidence on the part of appellee shows conclusively that he had no knowledge of danger from oil being on the floor. It shows he knew absolutely nothing about it.

The majority opinion states that appellee assisted in removing the drive shaft in broad daylight, while one of the witnesses for appellee testifies that it was eight or nine o'clock at night when they removed it. It is also said in the majority opinion that the engine room was electrically lighted, and if there was oil on the floor it was perfectly open and obvious. This statement of the court is squarely opposed to the evidence of appellee. The court says that if oil was there, appellee must have seen it the day before, if he had looked. What about the rule requiring the evidence on this proposition to be considered in the light most favorable to appellee? Appellee says he did not see it and did not know it was there, and that the room was dark.

It is next stated in the opinion that it was testified to by the machinist, and not denied by anyone, that he brought a double light socket and an extension cord back with him, and that he plugged in the extension line in the double socket to give an extra light on the side the men were working on, which made three lights. The court evidently overlooks the fact that the injury occurred on the 8th or 9th of October and the machinist says he did this work in the following November. There would have been three lights if he had put in two.

I do not think that under the facts this case is ruled adversely to appellee by the authorities cited by the court, or any one of them; but they are cited by the court, and the court again says that whatever oil was there was open and obvious. These statements absolutely ignore the evidence on the part of appellee. The opinion quotes decisions holding that where the danger arising from the negligent conduct of the master is so apparent and obvious in its nature as to be at once discoverable to one of ordinary intelligence, an employee who voluntarily undertakes to perform his work in such a

situation assumes the hazard, which exempts the employer from liability. That is true, if it was so open and obvious, but as I have said before it not only ignores the rule that we are to consider the evidence in a light most favorable to appellee, but it absolutely assumes that the appellee knew about it, when his testimony shows that he did not know anything about it.

In the case of *Mo. Pac. Rd. Co.* v. *Harville,* 185 Ark. 47, 46 S. W. 2d 17, an opinion written by the same judge who wrote the majority opinion in this case, among other things says: "In determining this question, we must view the evidence in the light most favorable to appellee, and, if there is any substantial evidence to support the verdict, when viewed in this light, it must be sustained."

Many, many decisions of this court might be cited to the same effect.

It is finally stated by the court in the majority opinion that the court cannot understand how the jury could have so found under the evidence, or how the trial court permitted it to stand. This statement of the court, I think, ignores the evidence of appellee.

I have already called attention to the evidence of E. B. Yarbrough, who had charge of the engine room in the daytime, and Arch Seamore testified that he was on the night shift; that Jack Brown did not work in the engine room, and as well as he remembers the pulley was torn up around nine or ten o'clock at night, and they brought it back the next night. When they put it up the next night, Jack Brown was helping to lift it, and he testified that appellee slipped and hurt himself; slipped on some oil on the floor that came out of the motor. They all had orders to keep the oil cleaned up. He testified that after Brown was hurt he went in the office and laid down on the table for about an hour. In about thirty minutes witness went in and asked him how he was feeling. He testified that Brown mentioned to him several times that his back hurt; that they all worked in the engine room, or elsewhere, when anything broke down;

that he saw Brown slip and hurt his back; when he slipped he turned loose of the pulley. He also testified that Jack Brown stepped in the oil; that the oil was at the north end of the motor and the light at the south end; that there were two light sockets there, but only one bulb.

Lex Morton testified that in the engine room there were two drops, but only one bulb. Witness does not remember what time it was that he was down at the Temple Cotton Oil Company's Gin and looked at the lights, but thinks it was in November sometime.

Dr. R. L. Bryant testified that Jack Brown came to his office on November 15, for an examination; he made a physical examination and made X-ray pictures; they were able to find considerable muscular rigidity over the back, and found that he was unable to stoop normally; his back was stiff, and he was not able to stoop and pick up things; X-rayed the lower part of appellee's back; X-ray picture showed that part between shoulders; shows the spine to be curved to the right side, and a separation of the second, third and fourth vertebrae; that the cause of the curvature of the spine was, in his opinion, caused by the injury he received; that there would be considerable pain, and it would have a tendency to cause stiffness. He identified the picture handed to him as the one taken by him. The curvature is in the same part of the spine where witness found the separation. He then exhibited a picture which showed the lower region of the spine. It showed that the fourth and fifth vertebrae were apparently flattened. On the left side he could see a fracture line. The left side is the one most markedly increased over normal. Witness is of the opinion that the condition of both the upper and lower parts of the spine could have been produced by the injury. He does not believe that appellee's condition could ever return to normal and appellee will always have a weak back; will never be able to do any stooping or lifting of heavy bodies.

Dr. J. M. Pate testified that he and Dr. Bryant gave appellee a thorough examination and that from this ex-

amination he found a curvature of the spine and also a widening of the discs; the patient was tender over the muscular region of the back; the lumbar region was very rigid; he cannot stand, or bend in either direction; he seemed to be in very much pain.

Jack Brown, the appellee, testified at length about his injuries, and while he continued to do light work, he said he had to work.

I think the court did not view the evidence in the light most favorable to appellee when it said: "The necessary inference is that he was not so disabled." But that is not the evidence. The evidence shows he was disabled, and if the verdict is for a greater amount than should be paid for the injury suffered, this would be no reason for dismissing the case.

I think the case should be affirmed. Mr. Justice HUMPHREYS and Mr. Justice BAKER agree with me in the conclusions herein stated.